21602.   TAYLOR *v.* THE STATE.

DECIDED DECEMBER 16, 1931.

388

*Arnold, Arnold & Gambrell,* for plaintiff in error.

*John A. Boykin, solicitor-general, J. W. LeCraw, William Schley Howard,* contra.

LUKE, J. The indictment in this case contains three counts, each charging Walter C. Taylor with the offense of bribery. The verdict was: "We, the jury, find the defendant guilty." The first question for determination is whether the court erred in overruling the demurrer to the indictment. The other questions presented are raised by the exception to the judgment overruling defendant's motion for a new trial, containing the usual general grounds and sixty-five other grounds.

Count 1 charges Walter C. Taylor with the offense of bribery, "for that said accused, in the County of Fulton and State of Georgia, on the 2 day of July, 1927, . . being then and there Clerk of Council of the City of Atlanta, . . and, as such, being in a position of confidence, trust, and clerkship in the Legislative Department of the City of Atlanta, composed of the 'Mayor and General Council of the City of Atlanta,' said office being an office of government of this State, did unlawfully receive of and from George C. Spence $9,000 in money, as a present and reward given to the said Taylor, to influence his official behavior in his said office above set forth, and received by him for said purpose; said giving and receiving of said present and reward being pursuant to and in consummation of a previous agreement and understanding between Taylor and Spence that said present and reward would be given in return for the services of the said Clerk of Council in obtaining from the City of Atlanta the sum of $30,000, 'in full settlement in suit of Thos. B. Brady vs. City of Atlanta in the United States District Court for the Northern District of Georgia, Northern Division,' and the purpose of the said unlawful agreement to give and receive said $9,000 as aforesaid, and the purpose for which said $9,000 was actually so paid and received in consummation of said agreement, included the influencing of the official behavior of accused as such Clerk of Council of the City of Atlanta, the official behavior of accused being that he procured the passage and adoption by General Council of a resolution authorizing said $30,000 settlement, that he procured the passage and adoption of said resolution first by Council of the City of Atlanta, that he then stamped said resolution 'adopted by Council,' with his official stamp, that he

then transmitted said resolution so stamped as aforesaid to the Aldermanic Board of the City of Atlanta, that he then stamped the said resolution 'concurred in' by said Aldermanic Board upon the said Aldermanic Board voting to concur therein, that he then transmitted said resolution so stamped as aforesaid to the Mayor of Atlanta; that he then transmitted and certified a copy of said resolution to the Comptroller of the City of Atlanta, after the Mayor's approval thereof; and accused then procured from the Comptroller of the City of Atlanta, the official check of the City of Atlanta for the $30,000 called for in said resolution, and delivered the same to George C. Spence, who was attorney for the said Thomas B. Brady; the said offense of bribery being unknown during the years 1927, 1928, and 1929, and not becoming known until some time subsequent to January 1, 1930, said resolution authorizing the said settlement of $30,000 above referred to being as follows:" (Here was set out said resolution "by councilman Moore," reciting that the terms of "said compromise" were "set forth in written communications from Spence and Spence, attorneys for the plaintiff, dated May 2 and May 10, 1927, addressed to Hon. Frank H. Neely, Chairman Bond Commission, a copy of said communications being hereto attached.") We deem it unnecessary to set out said communications.

The indictment next sets out numerous ordinances prescribing the duties of the Clerk of Council. The following is the gist of some of them: Sec. 735. The clerk shall attend all meetings of the General Council and Aldermen, and keep a correct record of their proceedings. Sec. 736. The clerk shall issue all licenses, as hereinafter pointed out, and all orders, summonses, notices, or other instruments, which may be required of him by the Mayor and General Council. Sec. 737. He shall keep a book of minutes, and other records including an ordinance book and a book in which he shall record all petitions for street work, etc. Sec. 742. He shall have an official seal, which shall be affixed to all documents certified to by him. Sec. 744. He shall make copies of all ordinances, except ordinances for construction of sewers, or for work of public improvement, and certify and transmit the same to the head of the department charged with the enforcement of such ordinance. Sec. 747. He shall notify any department of the City of Atlanta of the passage of any resolutions or ordinances by the Council affecting

such departments, and also furnish them copies of the same. Sec. 1966. In all elections by General Council the vote shall be taken viva voce on call of the roll by the clerk, and shall be entered on the minutes. Sections 1,000 and 1,001. It shall be the duty of the clerk to make preparations for holding all regular and special elections in the City, providing polling places, ballot boxes, booths, stationery, etc. Sec. 2032. He shall give bond in the sum of $10,000 to account to the City for all articles, goods, and monies coming into his hands by virtue of his office, including books, papers, etc. Sec. 2048. No person holding a position or office under the city government shall act as attorney in any legal proceeding against said City, nor be employed as attorney or counsel in any matter or cause adversely to said City.

After setting out said ordinances, count 1 concluded as follows: "And it also being . . among the official duties of accused in his said office as Clerk of Council to certify all official action by said General Council on ordinances and resolutions and resolutions upon the said ordinances and resolutions, and transmit the same so certified to the Mayor of Atlanta for his official action thereon, and the Mayor of Atlanta relied upon the correct performance of his duty by the Clerk of Council in passing upon ordinances and resolutions so transmitted to him by accused; and it was also the duty of said Clerk of Council to record the action of the Mayor thereon in the official records of the General Council kept by accused, said duties being established by custom and usage in the Legislative Department of the City of Atlanta; and it also being . . among the official duties of accused in his said office as Clerk of Council to certify all official action by Council of the City of Atlanta on resolutions and ordinances and transmit the same to the Aldermanic Board of the City of Atlanta, said duty being established by usage and custom in the Legislative Department of the City of Atlanta."

Counts 2 and 3 are so similar in form to count 1 that we deem it unnecessary to set out those counts fully.

Count 2 charges that on July 18, 1929, the defendant "did unlawfully receive of and from Samuel N. Evins, acting as attorney and agent for Atlantic Steel Company, $2,500 in money, said money being so delivered to and received by accused for the purpose of influencing the official behavior of accused in the matter of the

passage and adoption of a resolution by the General Council of the City of Atlanta and its approval by the Mayor, to the following effect:" (The effect of said resolution was to exclude the property of the Atlantic Steel Company from an annexation resolution. Said count continues: "the official behavior of accused being that he procured the passage and adoption by General Council of the above-stated resolution; that he then stamped the said resolution 'Adopted by Gen. Council,' (said stamp constituting the official entry upon said resolution that it had been passed by General Council), that he then transmitted said resolution so stamped as aforesaid to the Mayor of Atlanta, certifying by said transmittal that the same had been passed and adopted by the said legislature body of the City of Atlanta. . ."

Count 3 charges that on March 18, 1927, the defendant "did unlawfully receive of and from M. P. Roane the sum of $500 . . as a present and reward . . to get certain sidewalk pavement placed and laid on the east side of West Peachtree street, . . and the purpose of the payment of the said bribe and the purpose of the receiving of the said bribe by the accused included the influencing of the official behavior of accused as such Clerk of Council of the City of Atlanta; the official behavior of accused being that he procured the passage and adoption by General Council of an ordinance authorizing the said paving, that he procured the passage and adoption of said ordinance first by Council of the City of Atlanta, that he then stamped said ordinance 'adopted by Council,' with his official stamp, that he then transmitted said ordinance so stamped as aforesaid to the Aldermanic Board of the City of Atlanta, that he then stamped said ordinance 'concurred in' by said Aldermanic Board upon the Aldermanic Board voting to concur therein, that he then transmitted said ordinance so stamped as aforesaid to the Mayor of Atlanta, certifying by said transmittal that the same had been passed and adopted by said legislative bodies of the City of Atlanta; that he then transmitted and certified a copy of said ordinance to the Construction Department of the City of Atlanta, which Construction Department did the work of placing and laying the said sidewalk, for the obtaining of which said bribe was given. . ."

After affirming that "neither of the counts in said indictment charges this defendant with any offense under the laws of the

State of Georgia," the demurrer to count 1, by paragraph, avers substantially:

2. That none of the acts charged is within the scope of the official duties of defendant as clerk of the City Council of Atlanta, and that "no duty of said clerk could exist other than as defined by the charter and the ordinances of the City of Atlanta."

3. That the alleged bribe of $9,000 was given and received "pursuant to and in consummation of a previous agreement and understanding between said Taylor and Spence" that it would be given for the services of defendant in obtaining from the City of Atlanta $30,000 in full settlement of the Brady case; that this was an entire agreement, and the balance of count 1, stating that the purpose of said agreement included the influencing of the official behavior of the accused to procure the passage and adoption of said resolution, etc., was not warranted by said agreement, and was a mere conclusion of the pleader; that it did not appear whether both parties to said agreement or only one of them entertained said purpose, or whether only one of them had such purpose; that whether an agreement constitutes a bribe depends upon the terms and scope of the agreement, and not upon any purpose either party may have extrinsic to said agreement; and that there was no allegation that there was "any agreement on the part of Taylor . . to have his official acts influenced in stamping the resolutions . . or in transmitting them to the various officials as clerk."

4. That the alleged agreement did not include the doing of the acts alleged to have been within its scope; that bribery could only exist as to acts within the scope of the bribery agreement, and that it is nowhere expressly alleged that the defendant was bribed "to do these different things;" and that therefore the indictment is ambiguous and evasive, and does not put defendant upon notice of what he is charged with.

5. It does not appear how defendant procured the passage and adoption of said resolution by General Council—does not appear that the clerk had any voice in Council or any right to vote.

6. The charter of the City of Atlanta sets forth some of the duties of the Clerk of Council and provides that all other duties be prescribed by ordinance, and the clerk's duties could not be established in any other way. Wherefore, the defendant demurs to those

allegations of the indictment that certain of the clerk's duties were established by usage and custom.

7. Defendant could not have agreed to procure the passage of said resolution because the indictment shows that said resolution was introduced by councilman Moore in response to an offer of compromise made by the attorneys of Brady.

8. That no alleged behavior of the accused was within the scope of his duties as clerk—that the procuring of the passage and adoption of said ordinance was not, and the other acts alleged to have been done by defendant were not.

9. No duties of the Clerk of Council could be established by usage and custom.

10. That the only agreement alleged to have been made was that for a present consideration defendant would obtain a settlement of the Brady case for $30,000; that it was no part of the clerk's duty to obtain such settlement; and that it was not alleged that the defendant was bribed to do any of the other routine acts mentioned.

11. "Further demurring, this defendant says that each and every ordinance set forth in said count, or in said indictment, is irrelevant and does not set forth any duty on the part of this defendant to which the alleged contract previously set forth in said count could apply, and none of said ordinances cover any alleged act of this defendant set forth in said count which was alleged to have been within the purpose of said alleged contract of bribery."

12. The allegation that defendant and Spence had an agreement that $9,000 should be given in return for services of defendant in obtaining a settlement of the Brady case did not justify the presumption that Taylor would perform other than legitimate and proper acts; and that if any official acts of the defendant were performed in connection with the passage of said resolution, they were mere routine acts, "distinct and separate and apart from any act in procuring the passage and adoption . . of said resolution."

The demurrer to count 1 is very long and we have abbreviated it considerably. We think, however, that the foregoing indicates its material parts. The demurrers to counts 2 and 3 are so similar to the demurrer to count 1 that we do not deem it necessary to set them out. We will state the 34th paragraph of the demurrer, for

the reason that it is a summation of some of the most salient points raised in the demurrer to each of the counts. That paragraph follows: "34. This defendant says that the sum and substance of each and every count . . is that the defendant received a certain sum of money for the purpose of influencing Council of Atlanta in the passage of certain ordinances, resolutions or measures, and that likewise it was the purpose of said agreement to include the action of defendant as clerk in various other acts which are said to exist by custom and usage . . as duties of this defendant. This defendant . . says that it was not his duty as clerk to control or influence the action of council, and further says, as to said alleged duties . . existing by custom and usage, that no such duties could exist, because the duties of the clerk can be created only by charter or ordinance of the City of Atlanta, and none of said other alleged duties exist or are claimed to exist under charter provisions or provisions of an ordinance. Defendant says that as clerk his duties were fixed only by ordinance and charter provision, and could exist in no other wise, and therefore he says that each and all of said alleged duties set forth in each and every count do not exist either under the charter or the ordinances of the City of Atlanta, and do not set forth any duties of defendant as clerk, and therefore no statute of bribery of the State of Georgia is violated by the alleged acts."

We are of the opinion that the present indictment sufficiently alleges that the accused accepted a bribe to influence his official behavior in stamping, transmitting, and certifying said ordinance. See *Taylor* v. *State,* 42 *Ga. App.* 443, 448 (156 S. E. 623). It is strenuously contended, however, that the allegations in the indictment that the duty of the clerk to do those things mentioned was established by "usage and custom" irrevocably committed the State to the theory that such duties were so established; that the provision of the charter of the City of Atlanta (Ga. L. 1874, p. 144, sec. 134), that "his duties shall be prescribed by ordinance," precludes the establishing of such duties otherwise than by ordinance; and that, therefore, the indictment itself, construed in the light of said charter provision, shows that such alleged duties were not official duties of the clerk.

Our opinion is that the foregoing contention is not sound, and that the clerk's duties can be established by implication. "Public

officers have not only the powers expressly conferred upon them by law, but they also possess by necessary implication such powers as are requisite to enable them to discharge the official duties devolved upon them." 23 Am. & Eng. Enc. Law (2d ed.), 364, 365. To the same effect is the following from 46 Corpus Juris, p. 1032: "In addition to powers expressly conferred upon him by law, an officer has by implication such powers as are necessary for the due and efficient exercise of those expressly granted, or such as may be fairly implied therefrom." In the same volume of Corpus Juris, p. 1035, this statement occurs: "The duties of a public office include those lying fairly within its scope, those essential to the accomplishment of the main purpose for which the office was created, and those which, although incidental and collateral, serve to promote the accomplishment of the principal purposes." See also Pennington v. Gammon, 67 Ga. 456; Garrison v. Perkins, 137 Ga. 744, 750, 751 (74 S. E. 541); Wright v. Floyd County, 1 Ga. App. 582 (58 S. E. 72); U. S. v. Birdsall, 233 U. S. 223 (34 Sup. Ct. 512, 58 L. ed. 930). It may not be amiss to state that the trial judge expressed his view of the law in this regard in the following terse charge to the jury: "I charge you . . that the duties of the clerk are provided by charter or by ordinance, and that duties of the clerk can not accrue to the incumbent of that office or become a basis of bribery by use and custom alone. I instruct you, however, that duties or the existence of duties that naturally and practically follow as duties in relation to duties prescribed by charter or ordinance may become such duties as to furnish the basis of bribery if proven to exist and if bribery is proven in relation thereto." It will be observed that the last sentence of the charge quoted is in substantial accord with the authorities cited.

Were the duties which the indictment alleges were created by "custom and usage" such incidental duties of the clerk as naturally and practically followed from duties fixed by charter or ordinance? The charter of the City of Atlanta (Ga. L. 1874, p. 118, sec. 10) provides that "The legislative department of said city shall be vested in a Mayor and Board of Aldermen and Board of Councilmen. The Mayor and Board of Councilmen shall be styled the Mayor and Council, and the Mayor and Board of Councilmen meeting with the Board of Aldermen, or acting and meeting of separate days, but on any matter requiring the concurrent or separate action of both the

Board of the Councilmen and Board of Aldermen, shall be styled the Mayor and General Council." Section 13 of the same act provides that "In all votes, resolutions, or ordinances, having for their object the increase of the indebtedness of the city, or the expenditures of its revenues . . the Councilmen representing the different wards and the Aldermen representing the city at large, shall act as separate and distinct legislative bodies; and no vote, resolution, or ordinance, having for its object the increase of the indebtedness of the city, or the expenditures of its moneys, shall be voted until the same shall have received a majority of votes of each of these legislative bodies, separately cast." It appears from the indictment that it was the duty of the clerk, fixed by ordinance, to attend all meetings of the General Council and Aldermen and keep a correct copy of the proceedings. In the performance of his duties, the custom arose of the clerk's "stamping" the action of the Council, Aldermanic Board, or General Council, as the case might be, upon the document itself, and such "stamping" was treated by the units of the "Legislative Department" of the City of Atlanta as if official action had been taken as indicated. This manner of verifying the action taken upon any ordinance or resolution by any unit of the Legislative Department of the City of Atlanta by the officer whose duty it it was to keep a record of all proceedings appears to us convenient, expeditious, proper and necessary. In short, we hold that such "stamping" was an official duty of the clerk. We are of the same opinion as to certifying and transmitting documents. If we are correct in the conclusions reached, the duties referred to as established by usage and custom were bona fide official duties of the clerk, and there is no merit in the main contention of the accused, presented many times by the demurrer as well as by numerous special grounds. Neither do we think that the indictment is defective because the original "agreement and understanding" does not include the violation of the various duties of the clerk alleged to have been violated; or because the way in which the defendant procured the passage and adoption of the ordinance is not set out; or for any other reason stated in the demurrer.

The demurrers to counts 2 and 3 are so similar to the demurrer already passed upon that we see no occasion to discuss them at length. We hold that the trial judge did not err in overruling them.

It is clearly not feasible to set out fully or discuss at length the sixty-five grounds of the amendment to the motion for a new trial, covering fifty-nine pages of the record. Many of these grounds are controlled adversely to the plaintiff in error by conclusions reached by us in passing upon the demurrer. For the sake of brevity, we shall group many of the grounds in accordance with the substantial, ultimate question raised therein, whether such question be raised by motion, request to charge, or otherwise. The remaining grounds will necessarily be handled as briefly as possible.

A legal duty of the clerk of the City Council of the City of Atlanta can be established otherwise than by explicit provisions of charter or ordinance. Under this holding, which has been somewhat elaborated in our discussion of the demurrer, the following grounds of the amendment to the motion for a new trial disclose no reversible error: 1, 6, 7, and 10.

Ground 2 avers that the court erred in refusing a written request to charge the jury to the effect that no duty of the defendant as clerk "can exist by custom and usage." The court's charge contains the very essence of this request. See the excerpt from the charge set out in a former branch of this opinion.

The well known principle that it is not error for the court to refuse to direct a verdict controls, adversely to the plaintiff in error, the following grounds of the amendment to the motion for a new trial: 3, 14, 18, 21, 22, 23, 33, 39, 40, and 41.

It is well-established that a person can not be bribed to do something entirely outside his official duties, and that it is not an official duty of the Clerk of Council of the City of Atlanta to procure the passage and adoption of an ordinance or resolution. Ground 15 complains that the court refused a written request to charge to the effect that it was not the defendant's duty to take any part in the "passage and adoption of a resolution by the General Council . . and its approval by the mayor," and that he could not be convicted for so doing. The court's charge covered this request, and this ground discloses no error. Ground 4 is substantially the same as ground 15, and discloses no error. Grounds 31 and 34 are in effect elaborations of the question raised in the next two preceding grounds, and need no special consideration.

Ground 5 complains that the court refused a request to charge that it was not the duty of the defendant to procure a settlement of

the Brady suit for $30,000, and that money paid in pursuance of said agreement did not constitute bribery. There is no merit in this ground.

Ground 8 avers that the court erred in refusing a request to give the, following charge: "Referring to the first count, if the jury believe from the evidence that Mr. Spence did not pay Taylor any sum of money whatever for any purpose, but, on the contrary, paid the sum of money to another person,—Channing Cope, or some other person,—then Taylor would not be guilty of bribery under this count." The question whether or not a third person received the money for himself, or as Taylor's agent, was presented to the jury by the charge of the court sufficiently to enable them to pass upon it fairly and intelligently; and we see no merit in this ground.

Ground 9 complains of the court's refusal of a request to charge which was somewhat argumentative and not strictly adjusted to the evidence in the case. Therefore the court did not err in declining to give the charge.

The court did not err in refusing a written request to charge to the effect that the ordinances of the City of Atlanta do not "cover the making or taking of any memoranda or the use of any stamp upon any document," and there is no merit in ground 11.

The first part of ground 12 complains that the court refused a written request to charge to the effect that the defendant could not be convicted under the first count, unless the facts alleged therein were proved beyond a reasonable doubt. The court charged fully and clearly upon reasonable doubt, and there is no merit in this contention. The remaining part of count 12 is in effect that the court erred in refusing a written request to charge that the defendant could not be convicted for procuring the passage and adoption of an ordinance. The court charged this principle clearly and fully. Therefore ground 12 is not meritorious.

The gist of ground 13 is this: "If as to any of the counts Mr. Taylor was paid a sum of money to accomplish the passage of a resolution or ordinance or any other official action through the Council of Atlanta, and the agreement merely in substance was to the effect that Taylor was to render his service in procuring the passage of the resolution or ordinance or other action, then I charge you that the presumption would be that Taylor's services . . would be legal services only, and that Taylor could lawfully render

service in undertaking to persuade members of council to vote upon such resolution or ordinance or proposed official action, and there would be no presumption that any such employment of Taylor covered the doing of any act of Taylor as clerk." We do not think it would be proper for the court to instruct the jury that "Taylor could lawfully render services in undertaking to persuade members of counsel to vote upon such resolution," etc. We think that the charge is inaptly worded and not entirely sound, and hold that the court did not err in refusing to give it.

Ground 16 complains that the court failed to charge as requested to the effect that it was not the official duty of the clerk to stamp, certify, and transmit the resolution referred to in count 2. Ground 20 makes the same complaint, but is applied to count 3. If our previous holding to the effect that the clerk's duties could be established by implication is correct, the requested instructions are not law. To give them would be tantamount to directing a verdict as to counts 2 and 3. We hold that grounds 16 and 20 disclose no error.

Grounds 17 and 19 present requests to charge which were substantially covered by the court's charge.

Ground 24 sets forth a lengthy request which was substantially covered in the charge given.

In ground 25 it is contended that the resolution set out in count 2 of the indictment was an ultra vires act, for the reason that under the charter of the City of Atlanta, only the legislature had authority to deal with the annexation of territory of the city, and that, therefore, any act of the defendant relative to said resolution was non-official. In passing upon a demurrer in the case of York v. State, 42 Ga. App. 453, 461, 462 (156 S. E. 733), this court held: "An official act need not be lawful, to render the officer liable, but need only be official in form, and done under color of his office." This principle, which is further elaborated in the decision, settles adversely to the plaintiff in error the contention here made. We hold that there is no merit in this ground.

Ground 26 complains that the judge erred in refusing to charge as follows: "The court instructs the jury as to count 1 of this indictment, that the same is, under the undisputed evidence, barred by the statute of limitations, and you are directed to return a verdict of not guilty." Ground 27 is identical with the preceding count, except that it applies to count 3. In Cohen v. State, 2 Ga.

*App.* 689, 694 (59 S. E. 4), this court said: "Where it is stated that the indictment was not brought within the period of time allowed by Penal Code, § 30, because the offense of the offender was unknown, the State makes a prima facie case and shifts the burden of proof on the defendant when it is shown that the prosecutor or the party most interested did not know the offense (or the offender, as the case may be). Upon such proof that the offense was unknown to the person aggrieved, the defendant may show that it was known to him, or he may show, by evidence of common notoriety, that the bar of the statute of limitations has attached." In this connection see *Mangham* v. *State,* 11 *Ga. App.* 427 (3), 438 (75 S. E. 512).

We hold, in regard to the two foregoing grounds, that the testimony in the case, especially that of Solicitor-General Boykin, sustained the view that the statute of limitations had not attached, and that said grounds were properly overruled.

Ground 28 presents the same question raised in ground 25, and there is no merit in it.

Ground 29 complains that the court refused to give a requested charge to the effect that the defendant could not be convicted unless the evidence showed beyond a reasonable doubt that he was paid for doing or not doing some act within his official duties as clerk. This was substantially covered by the charge given by the court, and this ground is not meritorious.

The substance of ground 30 is that the court refused to charge the jury that if Taylor was paid for drawing a resolution such as that set out in the second count of the indictment, this would not be bribery. The charge of the court sufficiently covered the principle invoked in this request to charge, and to refuse to give it was not error.

We have previously held that there is no merit in ground 31. In principle it is so similar to the two foregoing grounds that it would answer no good purpose to set it out.

Count 32 avers that the court erred in refusing to charge as follows: "Referring to the first count, the court instructs the jury that if Taylor received a sum of money in the amount therein set forth, but if you believe that he received this sum of money by reason of pretending to represent a property owner or other person having a claim of damages, or having some real or pretended claim

against the city, when in truth and in fact such person was fictitious and had no real claim, and Taylor, in pretending to receive the money for the pretended claimant, received it for himself, . . I charge you . . that this would not constitute the crime of bribery, . . and you could not convict him." This ground is very similar to ground 9. The requested charge is somewhat confusing and is not strictly adjusted to the evidence, and the court did not err in refusing to give it.

Ground 33 is in effect that the court refused to direct a verdict for the defendant. This has already been decided adversely to the plaintiff in error. Ground 34 has already been decided. There is no merit in it.

Ground 35 complains of the court's refusal to charge as follows: "Referring to the first count, if the jury believe from the evidence that Mr. Spence paid the money to Mr. Cope, thinking that Mr. Cope was some other person, and that he represented a party who had a claim, real or supposed, against the City of Atlanta, and if Spence did not intend to pay the money to Taylor, and had no agreement or understanding of any sort with Taylor that for a sum of money . . Taylor would perform any official acts as clerk, . . the defendant could not be convicted under the first count." The principle that Taylor could only be convicted for performing an official act was clearly presented to the jury in the charge of the court. There is no merit in this ground.

The following quotation from the requested charge set out at some length in ground 36 sufficiently indicates the substance of the ground: "The extent of the bribe is determined by the arrangement between the parties, and unless that arrangement covers and contemplates the doing of some official act, or the not doing of some official act, for which the bribe . . was given, then there can be no bribery." In the light of the charge given, the court did not err in refusing to give the charge requested.

Ground 37 complains of the court's refusal to charge to the effect that the doing of a non-official act by the defendant was not a violation of the law. The court did charge this principle clearly.

Ground 38 complains of the refusal to charge that if the defendant "was not paid any money to stamp any documents, or to transmit any papers, . . or to make certified copies and send them to the different city departments, . . he can not be convicted of

bribery, even though he were paid money to do other things, such as attempting to influence or lobbying with the City Council in behalf of or against any measures." This proposition was covered by the charge given.

Grounds 39, 40, and 41 complain of charges as merely instructions directing a verdict. They have already been decided.

Ground 42 avers that the court erred in charging the law of conspiracy, because "there was no proof of any conspiracy in this case." An examination of the brief of evidence satisfies us that there is no merit in this ground.

Ground 43 complains of a charge substantially in the language of the Penal Code (1910), § 271. The contention is that this charge was not warranted by either the indictment or the evidence in the case, "said indictment being framed under section 270 of the Penal Code." The sections referred to are inseparably bound together, and under the reasoning in *Payne* v. *State*, 153 *Ga.* 882 (113 S. E. 446), and *York* v. *State*, supra, we are of the opinion that the defendant Taylor was an "officer of government of this State," as alleged in the indictment, and also an "officer of this State." We hold that the court properly charged section 271, and that the ground is not meritorious.

The gist of ground 44 is that the court erred in charging the jury that if the defendant did everything charged in the indictment, he would be guilty of bribery. This ground is really an amplification of the general grounds. There is no merit in it.

Ground 45 complains of the charge of the court relative to the manner in which the clerk's duties could be established. The excerpt from the charge complained of appears in that part of this decision dealing with the demurrer. The charge was favorable to the defendant, was authorized by the evidence, and was not erroneous for any reason assigned.

Ground 46 complains of the following extract from the charge of the court: "An officer of government may be bribed to do his duty as well as not to do his duty, provided, of course, he is under the influence of a reward or a bribe." The charge is abstractly correct, and we do not think that it can be reasonably concluded that the plaintiff in error was injured thereby in any way. We hold that there is no merit in this assignment.

Ground 47 complains of the admission of certain testimony in

bulk. Some of the testimony was objectionable, but some of it was not. Therefore, this ground presents no cause for a new trial. See *Trammell* v. *Shirley,* 38 *Ga. App.* 710, 716 (145 S. E. 486), Rule 19, and cit.

Grounds 48, 49, 50, and 51 allege error in admitting the testimony of the mayor and of former mayors of Atlanta, C. S. Winn, James L. Key, I. N. Ragsdale, and Walter A. Sims, as to the manner in which the clerk had been performing his duties during their respective administrations. This testimony had reference to those duties of the clerk set out in the indictment which we have already held could be established by implication. We hold that there is no merit in any of these grounds.

Ground 52 complains that the court erred in admitting in evidence the "voucher of the City of Atlanta payable to Spence & Spence, as attorneys of record in the suit of Thomas B. Brady *v.* City of Atlanta, in the sum of $30,000. . ." A receipt for said voucher and a release signed by Spence & Spence as attorneys for Brady were likewise objected to at the same time. The gist of the objection to said papers was that, "taken in connection with the evidence of the State, they do not support the allegations in the indictment," and that "they do not show bribery." In our opinion, these documents were highly material to the State's case and were properly admitted for the consideration of the jury.

Ground 53 avers that the court erred in admitting in evidence the "original resolution authorizing acceptance of the offer of compromise by the plaintiff" in the Brady case, a copy of said resolution being set forth in count 1 of the indictment. Ground 54 complains of the admission in evidence of the "resolution passed by the General Council of the City of Atlanta . . providing that the Atlantic Steel company's plant be not covered in the resolution . . requesting members of the legislature to annex certain territory of the City of Atlanta." Ground 55 is that the court erred in admitting in evidence the "resolution of the General Council of Atlanta . . requesting the General Assembly of Georgia to annex certain territory to the City of Atlanta," with an amendment thereto "to the effect that the Atlantic Steel Company's plant shall be included in the annexation so to be passed by the legislature." Without going into detail, we shall content ourselves with stating generally that the gist of the objections to the foregoing documents is

that under the evidence adduced they were entirely irrelevant. We think that such evidence was material to the State's case, and hold that it was properly admitted.

Ground 56 is that the court erred in admitting in evidence "a certified copy of ordinance . . introduced by Councilman York in the General Council of the City of Atlanta for the replacement of a six-foot sidewalk on West Peachtree street, . . the certificate being a rubber-stamp certificate containing the words, 'A true copy, Walter C. Taylor, Clerk of Council.'" It appears from this ground that "the State had introduced the original, of which the foregoing certified copy was a copy, without objection." The gist of the objection was that there was no proof that Taylor ever saw the copy or knew that it was going to be made—that "it is only a stamped facsimile signature." It is also contended that there was no evidence that "the doing of this function" was an official duty of the clerk. We hold that the document was properly admitted in evidence.

Ground 57 avers that the court erred in admitting in evidence "check . . drawn on the Citizens & Southern National Bank and signed by Spence & Spence, . . payable to the order of George C. Spence, and stamped 'Paid'" by said bank. The objection to this evidence was "that the same was . . wholly irrelevant; that the State's witness testified that he never paid anything to Taylor and never intended to pay any sum to Taylor, and that he never contracted with Taylor to do any act as clerk, and that there was no evidence that any person gave any part of this check to Taylor." The $10,000 check referred to was the check cashed by Spence immediately after depositing the city's $30,000 check, and out of the proceeds of said $10,000 check Spence delivered $9,000 to Cope upon Taylor's instructions. There is evidence to the effect that this $9,000, alleged to constitute the bribe in the first count of the indictment, did reach Taylor. We are satisfied that said check was admissible in evidence.

Ground 58 complains of the admission in evidence of "a copy of the mandate of the United States Circuit Court of Appeals, . . in which it was stated that in the case of Thomas B. Brady, plaintiff, and City of Atlanta, defendant, wherein the decree of the District Court . . was in favor of the said defendant, that the said decree was by the . . Circuit Court of Appeals affirmed,"

which "mandate bore an entry that it was received in the clerk's office of the United States District Court on March 12, 1927, and was filed in the District Clerk's office March 15, 1927, the said mandate being made the decree of the District Court . . on March 15, 1927." This evidence was material to the State's case, and the court properly admitted it.

Ground 59 complains of the admitting in evidence of "check drawn by Jones, Evins, Powers & Jones on the Atlanta Trust Company in favor of 'Cash,' for $2500, dated July 18, 1929, and indorsed on the back, 'Mary C. Shaw,' and stamped 'paid,' by the Atlanta Trust Company on the same date." It may be concluded from the evidence of Mr. Evins that Taylor indicated that he preferred cash, that the check was made payable to "Cash," that the lady stenographer cashed it, and that Taylor got the proceeds thereof. The gist of this objection is that "the testimony of the witness Evins showed there was no bribe, that the money represented by the check was . . paid . . for a legitimate purpose," and that the evidence was irrelevant. This ground very much resembles an amplification of the general grounds as to count 2. We hold that it is not meritorious.

Ground 60 avers that the court erred in admitting the "check of the Atlantic Steel Company for $3,000, drawn . . and dated July 18, 1929, and being in favor of Jones, Evins, Powers & Jones," indorsed by said firm, and stamped "Paid." The objection was that the testimony of Mr. Evins "showed that there was no bribe, and that the money represented by the check referred to in the 59th ground . . was not paid in connection with a bribe." We see no merit in this ground.

Ground 61 avers that the court erred in admitting "a carbon copy of check of the Atlantic Steel Company for $3,000, referred to in the ground immediately preceding," together with bill of said attorneys "for professional services rendered in the matter of appearing before City Council and various committees of said Council, and doing all other things necessary in the matter of the incorporation of the Atlantic Steel Company's plant in the City of Atlanta." The gist of the objection was that there was no proof of a bribe, and the $2500 payment referred to in the 59th ground of this motion was not paid in connection with a bribe, but for a legitimate service. The ground is not meritorious.

Grounds 62, 63, 64, and 65 are merely amplifications of the general grounds.

We come now to the general grounds of the motion for a new trial. In discussing them, we shall devote our attention mainly to indicating the salient features of the State's case.

George C. Spence had a client, T. S. Brady, who owned certain property in the part of the City of Atlanta where the Central Viaduct was to be built. Spence brought an injunction suit in behalf of Brady, to restrain the city from issuing bonds and building the viaduct. The injunction was denied in the United States district court, and this decision was affirmed by the Circuit Court of Appeals. Only about two days before the expiration of the time for appealing the case to the United States Supreme Court, the General Council passed an ordinance authorizing the payment of $30,000 in settlement of the Brady case, the defendant performing in connection with said ordinance the acts of stamping, certifying, and transmitting it, as alleged in the first count of the indictment. The city's check for $30,000 was made out to "Spence & Spence as attorneys of record in suit of Thos. B. Brady vs. City of Atlanta." The City Comptroller testified that ordinarily such a check would be delivered to the "attorney or principal." The check came into Taylor's hands. Taylor telephoned to Spence that he had it, and made an appointment to meet Spence at the Candler Building. Taylor procured his friend Channing Cope to go with him. When they arrived at the appointed place Taylor handed the $30,000 check rolled up in a newspaper to Spence, saying: "The check is in that newspaper." According to Mr. Spence's testimony, Taylor introduced Cope to him as "Thompson," saying: "You can complete the transaction with Mr. Thompson." Spence said: "Well, you mean for me to give this man $9,000?" Taylor replied: "Yes." Spence said: "All right." Spence deposited the $30,000 check, made out a $10,000 check to himself and cashed it, and then went to a near-by bank and handed "Thompson" $9,000 in cash out of the proceeds of the check. Cope then went to his office and put the money in a drawer. Shortly thereafter Taylor appeared, and Cope said to him, "Package in the drawer," or "Letter in the drawer." Taylor then went into Cope's private office where the "package" was, and Cope never saw the money again.

Cope claimed that his memory was bad from illness, and his testi-

mony was somewhat hazy and uncertain. He testified that he was introduced to Spence in his right name, and that he did get the money at Taylor's instance. He further swore that he had no interest whatever in the $9,000 he received from Spence, that he knew nothing about any bribery transaction, and that he accompanied Taylor and took the money at Taylor's request.

Mr. Spence testified, that he represented several persons owning property near said viaduct who had claims against the city; that the original arrangement was that $20,000 would settle the claims of said parties and that of Brady; that a man named Thompson asked witness if he would include a $10,000 claim of his in the settlement with the city if Thompson would get the city to pay $30,000 instead of $20,000; that in paying the $9,000 to "Thompson," or Cope, he was merely settling Thompson's claim. Mr. Spence stated that the defendant was very efficient, and that he had had some conversation with him, but denied that the $9,000 was paid to Taylor as a bribe, or that it was paid to him at all.

We shall not undertake to go into the testimony of Mr. Spence or any other witness at length. The defendant, of course, denied his guilt. Suffice it to say that in our opinion the evidence warranted the jury in concluding that the defendant did receive the $9,000 as a bribe to influence his official conduct in connection with procuring $30,000 from the City of Atlanta in settlement of the Brady case.

We come next to count 2. The Atlantic Steel Company owned a plant just outside of the city limits of Atlanta. A resolution recommending that the limits of Atlanta be extended was so amended as to include said plant. This resolution was adopted by the General Council of the City of Atlanta. Said recommendation was to the legislature, which had authority to act upon it. Preferring for obvious reasons that its plant be without the limits of the city, the Steel Company became interested. The officials of that company took the matter up with their attorney, and he agreed to pay the defendant $2,500 to assist in blocking the annexation project. Taylor drew a resolution excluding the Steel Company's plant from the previous annexation resolution, interviewed various members of the General Council, and procured some of them to sign his resolution before it was introduced. The resolution was promptly adopted. The defendant performed his usual duties as to stamping, certify-

ing, and transmitting the ordinance. He then furnished the attorney for the Steel Company with a copy of the measure as adopted. Two days after the resolution was passed, the attorney paid Taylor $2500 for his services. Taylor requested that he be paid in cash; the attorney for the company drew a check for $2500 payable to "Cash;" and said attorney's stenographer indorsed and cashed said check, brought the money to said attorney, and he delivered it in cash to Taylor. Said attorney testified: "We employed him to lobby for us, not only before council but the legislature. The reason we waited until two days after the ordinance excluding the steel plant was passed and approved was that his employment had ended. . . He was employed to advise us all the way through and help us."

The foregoing indicates the nature of the case made out under count 2. We think that the evidence supports the charge, and so hold.

We come finally to count 3. In regard to it, we will only say that the evidence warranted the jury in concluding that M. P. Roane and others owned property on the east side of West Peachtree street in the City of Atlanta; that the city took up the sidewalk in front of said property with the intention of widening the street; that because of the location of other property in relation to said street it was found impracticable to widen the street; that months passed and the condition of the sidewalk was not improved; that said property became less valuable for renting purposes, because of the condition of the sidewalk, and Roane had to rent his property for $50 a month less than he had been getting before the sidewalk was torn up; that Roane went to see the City Construction Department and to Councilman York, without results; that he then put the matter before the defendant, and within ten days thereafter the sidewalk was replaced; and that Taylor performed his usual duties of stamping, certifying, and transmitting the ordinance authorizing the relaying of said sidewalk. It appears that Taylor was paid $500 "to get the sidewalk laid," and that the details of the procedure to effect that purpose were left to Taylor.

The foregoing is by no means all the evidence in reference to count 3, but it does indicate the nature of the State's case. We hold that the evidence supports the charge.

On the general aspects of the case, we think the evidence au-

thorized the inference, under each count, that the defendant was employed, not merely to lobby with the councilmen and influence them to vote a certain way, but to procure a certain practical result desired by the alleged bribegiver, and that in the accomplishment of this result the defendant was acting under the influence of a bribe in the performance of certain official services, as alleged in the indictment. See, in this connection, People v. Keyes, 103 Cal. App. 624 (284 Pac. 1096); People v. Lafaro, 250 N. Y. 336 (165 N. E. 518); Fall v. U. S., 49 Fed. (2d) 506.

It would seem unnecessary that the person delivering the reward should actually and consciously have had in mind that he was paying for official services, but upon this point it would be sufficient if the defendant himself knew and intended that in accomplishing the desired end he would in fact perform official services of some character as a part of the entire object to be achieved. It has been held that if a person delivers money to a public officer with the corrupt intention of influencing his decision in a matter pending before him, such person is guilty of bribery, although the officer receives the money in ignorance of what it is, and retains it solely for the purposes of public justice. Commonwealth v. Murray, 135 Mass. 530 (4). Conversely, the guilt of an officer, in receiving a reward upon the understanding that his official conduct shall be influenced thereby, is not dependent upon the existence of a like intent on the part of the person furnishing such reward to him. People v. Bunkers, 2 Cal. App. 197 (8) (84 Pac. 364); 9 C. J. 404. The rule as to the meeting of the minds of the parties, so commonly spoken of as requisite to a valid civil contract, can not apply in determining the guilt or innocence of one of the parties on a charge of bribery.

It may be true that stamping and certifying the ordinance or resolution as having been voted on favorably by the legislative body of the city was not essential to its validity, but it was nevertheless an official act, performed by the clerk under his duty imposed by ordinance, to attend the meetings of council and keep a correct record of their proceedings. Whether such duty was or could have been established by custom need not be decided. If not, the allegations as to that matter may be treated as surplusage.

The jury were not bound to accept literally the testimony of any one of the persons from whom the defendant received the rewards

in this case, but, as we have already stated, the circumstances were such in each instance that the jury could have concluded that a completely executed result, favorable to the other party to the agreement, was expected and required at the hands of the defendant, in the execution of which the defendant himself, if not the other party, contemplated the doing of certain official acts which he did in fact perform under the influence of the bribe. For instance, the purchaser of an automobile expects to obtain a fully completed vehicle. He does not consciously purchase a carburetor, or a gas-tank, or a brake lining, but these are things which are nevertheless included within the purchase. So, in the present case, if the defendant alone intended the performance of *certain official acts* as a part of the accomplishment of the general result which he undertook to procure for the benefit of the other parties, and if in the whole scheme he was acting under the influence of the rewards promised or received, he would be guilty of the offense of bribery as respects *such official conduct,* although many or even most of the other acts performed by him did not fall within the line of his official duty. Such is the present case as the jury were authorized to find it under the evidence.

None of our conclusions in this case are in conflict with the decision of the Supreme Court in *Newman* v. *State,* 97 *Ga.* 367 (23 S. E. 831), nor with anything adjudicated in the former decision in the instant case as reported in 42 *Ga. App.* 443 (supra).

We have previously indicated our opinion that under the evidence adduced at the trial the jury had the right to reach the conclusion that the statute of limitations did not apply in this case. Our conclusion is that the court did not err either in overruling the demurrer to the indictment or the motion for a new trial.

*Judgment affirmed. Bell, J., concurs. Stephens, J., dissents.*

STEPHENS, J., dissenting. The charges against the defendant, which are contained in the three counts of the indictment, are that he, as the clerk of the council of the City of Atlanta, was guilty of bribery, in that he received sums of money to influence his behavior in the discharge of his official duties as clerk, it being specifically alleged that he received money for his services in obtaining from the City of Atlanta a sum of money in settlement of a pending litigation to which the city was a party, procuring the construction of a sidewalk, and also in procuring the repeal of a resolu-

tion of the General Council which recommended to the State legislature the inclusion of certain territory within a proposed extension of the corporate limits of the city, and that these services included the procurement by Taylor of the passage of ordinances and a resolution by the legislative authorities of the City of Atlanta, and his services as clerk of the council in stamping the ordinances and the resolution as approved by the council and the aldermanic board, transmitting them to the aldermanic board and the mayor, certifying to their adoption and transmitting certified copies of them to the governmental departments of the city.

It was not within the official duties of the clerk of the council of the City of Atlanta to vote upon ordinances or resolutions of the legislative authorities of the city, or to procure the passage of such ordinances or resolutions, or to negotiate settlements of claims for money against the city, or to procure the laying and construction of sidewalks in the city or putting the ordinances or resolutions into effect. The only official conduct of the defendant Taylor as clerk of the council which, as alleged in the indictment, was influenced by the money alleged to have been paid to him, was his affixing a stamp evidencing official approval upon the ordinances and the resolution, transmitting them from one body to another, making certified copies of the ordinances and the resolution and transmitting the copies to the departments of government. Unless Taylor accepted money to influence his conduct in some one of these respects he is not guilty of the offense of accepting a bribe, notwithstanding he may have accepted money to influence his conduct as respects the other acts alleged, viz., procuring the passage of the ordinances and a resolution and negotiating the settlement of a claim against the city and procuring the construction of a sidewalk in the city. *Taylor* v. *State,* 42 *Ga. App.* 443 (156 S. E. 623).

As respects the charges against him, Taylor entered upon the trial with a presumption of innocence in his favor. This presumption must be overcome by evidence, whether direct or circumstantial, which authorizes beyond a reasonable doubt the inference that he is guilty of the crime of bribery as charged. Taylor's conduct in accepting money for his services in bringing about the desired results must be construed with reference to this presumption. If he accepted money for the purpose of rendering services in getting certain ordinances and a resolution through council and accomplish-

ing the desired results of settling a claim against the city, the laying of a sidewalk, etc., and if he could have accepted the money for the rendition of such services without selling his official conduct and without accepting the money as a bribe to influence his official conduct, presumably he did not accept the money as a bribe to influence his official conduct as clerk of the council with reference to stamping, transmitting, and certifying as to ordinances and a resolution of the legislative bodies of the city. Therefore, in order to overcome this presumption that Taylor, in accepting the money for his services was innocent of accepting it as a bribe to influence his official conduct in the respects indicated, there must be adduced competent evidence, either direct or circumstantial, which would authorize the inference beyond a reasonable doubt that he accepted the money as a bribe to influence his official conduct.

In so far as there appears from the evidence any express agreement as respects the employment of Taylor's services, it was merely that he would use his influence to obtain the passage by the legislative bodies of the city of certain ordinances and a resolution and thereby accomplish certain results desired by those who employed him. The means and methods of accomplishing these results were left to Taylor's discretion. It was not agreed that he would use any illegal methods. As to the performance by Taylor of any official duty, the agreements are silent. As respects two of the counts in the indictment, viz., those having reference to the construction of the sidewalk and to the exclusion of certain territory from inclusion in the proposed city limits, there is direct and positive testimony, which is not disputed by any other testimony of the same character, that Taylor's employment did not include the influencing of his conduct as respects his official duties as clerk in stamping, transmitting, and certifying as respects any ordinance or resolution of the legislative bodies of the city.

The express agreements made with Taylor by which he was to use his influence to obtain the passage of certain ordinances and a resolution by the legislative bodies of the city and accomplish certain results, and which contained no express undertakings by him to do any illegal act or to perform any official duty, were perfectly legal. The rule with reference to the construction of contracts is that where there is an express contract which contains no stipulations to do an illegal act, an agreement to do an illegal act will not

be read into the contract by implication. As stated in 13 C. J. 242, "a contract will not be implied where it would result in the perpetration of a wrong, or it would be inequitable to do so, or where the parties can not legally make an express contract, so a promise to do an act contrary to duty or to law is never implied."

There being no express agreement that Taylor was employed to do any official act as clerk, or that he received any money to influence his official conduct as clerk, no such agreement is implied. If it was contemplated that Taylor's official conduct would be influenced by the money which was paid to him, this fact can be established only by inference from the evidence adduced. Other than evidence that Taylor was the clerk of the council and that the performance of ministerial duties of the clerk of the council, such as stamping, transmitting and certifying as respects ordinances and resolutions, was necessary to facilitate their enactment and the putting of them into effect and accomplishing the results desired, there is not one scintilla of evidence in the entire record which would authorize the inference that the money was paid to Taylor, or received by him, to influence his official conduct as clerk of the council.

"Bribery" as defined in section 270 of the Penal Code of 1910 is "the giving or receiving any undue reward to influence the behavior of the person receiving such reward in the discharge of his duty in any office of government or of justice." There can be no bribery except of a public official, and as respects his guilt as a recipient of a bribe he must have received money, or something of value, to *influence* his conduct in office. Bribery, as defined in 9 C. J. 402, "is the voluntary giving or receiving of anything of value in corrupt payment for an official act done or to be done; the giving, offering, or receiving of anything of value, or any valuable service, intended to influence one in the discharge of a legal duty; or the crime of offering any undue reward or remuneration to any public officer, or other person intrusted with a public duty, with a view to influence his behavior in the discharge of his duty." From other definitions of bribery, taken from Blackstone, Hawkins, Bishop, Russell, and others, and from decisions of the courts, as quoted in notes to the text in 9 C. J. 402, the *influencing* of official conduct appears to be an essential element of the offense of bribery. Therefore any payment of money to a public official, when made to and accepted by him as a loan, or for services to be rendered by

him, where the money was neither paid to him nor accepted by him for the influencing in any way of his official conduct, does not constitute bribery. To "influence," as defined in Webster's Dictionary, is to "move," "persuade," "affect," "modify," and also, as defined in the Standard Dictionary, to "affect or sway by motives, as the feelings or conduct;" "sometimes as a euphemism for 'bribe;'" "exercise of a moral or secret control over the actions of others;" "sometimes, power of privately controlling the acts of those in authority." Since it is essential to the offense of bribery of a public official that his official conduct be influenced, i. e., be affected, etc., by the money or thing of value paid him, a public official, when paid money or anything of value for his services in bringing about certain results, although these results can not be accomplished otherwise than by the performance of certain official duties, is not guilty of accepting the money as a bribe for the performance of these official duties unless he received and accepted the money to *influence* his official conduct in the performance of these duties, or his official conduct was *influenced* thereby. It is suggested that the employment of Taylor to procure the passage of the ordinances and resolution and to accomplish the desired results, necessarily included the doing of all acts in the premises necessary to the accomplishment of these results, and that, since the performance of these ministerial official duties by the clerk was necessary to the accomplishment of these results, the payment of the money to Taylor necessarily influenced his official conduct as respects the performance of these duties. Although the performance of such ministerial duties as stamping the ordinances, etc., by the clerk may have been necessary to facilitate the procurement of the passage of the ordinances and resolution and the accomplishment of the results desired, for which Taylor was employed, it does not necessarily follow therefrom that in Taylor's employment to bring about these results and his acceptance of money for his services in the matter his official conduct as clerk in stamping the ordinances, etc., was *influenced*.

Presumably every public official properly performs the duties of his office. This is not merely a legal fiction, but is a presumption which every man in the ordinary walks of life acts upon in dealing with public officials. Presumably, therefore (and there is nothing in the evidence which would authorize an inference to the contrary), these ministerial duties of the clerk, as respects which it is alleged

Taylor accepted a bribe to perform, would have been performed as a matter of course by him as clerk, or by any one else who at the time might be the clerk of the council. So far as this evidence discloses there was no necessity to pay Taylor anything to influence or induce the performance by him of his official duties as clerk in stamping, transmitting, and certifying as respects any ordinance or resolution of the legislative bodies of the city. He was not holding out on anybody in refusing to perform such official duties. It was not contemplated that he should exercise his official duties to the advantage of his employers by falsely entering as approved, or transmitting or certifying as to, ordinances or resolutions which had not lawfully passed the legislative bodies of the city. It therefore must be taken as a fact undisputed that the persons employing Taylor would obtain whatever benefit might accrue to them in Taylor's discharge of his official duties as clerk in stamping, transmitting, and certifying as respects the ordinances or resolution, without any expenditure whatsoever. These services they were entitled to receive for nothing, and it was not necessary to pay anything for them. The only services needed of Taylor, and which his employers could not get for nothing, were his services as a man of diplomacy and political influence in obtaining the passage of ordinances or resolutions by the legislative bodies of the city, and obtaining for his employers certain beneficial results desired by them, all of which could have been obtained without the payment of anything to Taylor as clerk of the council, or to any other person as clerk of the council, for the performance of the mere routine ministerial duties in connection therewith, such as the stamping, transmitting, and certifying as respects the ordinances and the resolution, and which there was no necessity of buying. As intelligent men ordinarily do not pay out money for that to which they are entitled as a matter of right, and which does not have to be paid for, but which comes to them as a matter of course, the only inference deducible from the evidence and all the circumstances is that no money was paid to or received by Taylor to *influence* his *official* conduct.

It might be noted that, although performance of the ministerial duties of entering a stamp of legislative approval upon ordinances or resolutions, or performing the other official duties with reference thereto, was necessary to *facilitate* the accomplishment of the results for which Taylor was employed, they were not essential to the legal-

ity of the adoption and approval of ordinances or resolutions of the legislative bodies of the City of Atlanta. In the absence of some mandatory provision of law it is not essential to the validity of a statutory enactment that the fact of its passage be officially certified to by any legislative officer. See 8 Cyc. 761; 1 Sutherland on "Statutory Construction," (2d ed) § 56; and cases there cited. The duties of the clerk of the council of the City of Atlanta in this respect are not made mandatory by law.

Since, in order to obtain the general results, to' accomplish which Taylor was employed, there was no necessity to influence his official conduct as clerk of the council, it was not his services as the clerk of council that needed to be bought and paid for. In fact there is direct and positive testimony to the effect that Taylor's employment as respects his services in obtaining a repeal of an ordinance with reference to the extension of the city limits, and obtaining the construction of a sidewalk, had no reference to the fact that Taylor was clerk of the council. As respects the matters referred to in all three counts of the indictment, it was Taylor's services as an able and influential political "go-getter" that were needed, and there is no evidence to authorize the inference that to obtain the desired results for which he was employed it was necessary to employ him as the clerk of the council, or to pay him anything to influence or affect his official conduct as clerk in stamping, transmitting and certifying as to the ordinances and resolution necessary to bring about the general results for which he was employed. The evidence is only to the effect that the performance of such official ministerial duties was necessary to *facilitate* the approval of the ordinances and the resolution and to bring about the desired results for which Taylor was employed. Nowhere in the evidence is the inference authorized that Taylor was employed because he was the clerk of the council. As his official services as clerk of the council were not needed, the fact that he was the clerk of the council was merely a coincidence, and was only incidental. Taylor was expressly employed to bring about general results, viz., the obtaining of the passage of ordinances and a resolution by the legislative bodies of the city, and thereby effecting a settlement of a monetary claim against the city, and the construction of a sidewalk, all of which could have been accomplished by him if he had not been clerk of the council. He could have complied with this

contract, and could by his efforts have obtained the desired results for which he was employed, had he resigned his office as clerk of the council after he had entered into the contract of employment, and before it became necessary for him to perform any official duty as clerk in connection with these transactions. It therefore seems conclusive that the employment of Taylor to procure the passage of the ordinances and the resolution, and to obtain the desired results did not necessarily involve the performance by *him* of any official duty as clerk of the council of the city.

There being no positive or direct testimony that the money was paid to Taylor or accepted by him to influence his official conduct, his conviction of bribery can be sustained only upon the theory that it is predicated upon circumstantial evidence. As provided in section 1010 of the Penal Code of 1910, "to warrant a conviction on circumstantial evidence, the proved facts must not only be consistent with the hypothesis of guilt, but must exclude every other reasonable hypothesis save that of the guilt of the accused." Where the evidence in a criminal case, with all reasonable inferences therefrom, is as consistent with the defendant's innocence as with the defendant's guilt, it is insufficient to legally establish his guilt. In *Williams* v. *State,* 113 *Ga.* 721 (39 S. E. 487), the court held that: "the evidence against the accused was entirely circumstantial, and, while it raised a suspicion of his guilt, was not sufficient, though given its strongest intendment as against him, to exclude every other reasonable hypothesis. It was therefore, error to refuse a new trial." In *Henderson* v. *State,* 147 *Ga.* 134 (92 S. E. 871), the court held that "the proved facts are consistent with innocence, and are insufficient to exclude every reasonable hypothesis save that of the guilt of the accused. Suspicion of guilt will not authorize a conviction." This rule was well stated by the Supreme Court of Iowa, in Asbach *v.* Chicago, etc., 74 Iowa 248 (37 N. W. 182), and was followed with approval by the Circuit Court of Appeals of the 8th circuit, in an opinion rendered by Mr. Justice Van Devanter as circuit judge, in United States Fidelity & Guaranty Co. *v.* Des Moines National Bank, 145 Fed. 273: "A theory can not be said to be established by circumstantial evidence, even in a civil action, unless the facts relied upon are of such a nature, and are so related to each other, that it is the only conclusion that can fairly or reasonably be drawn from them. It is not sufficient that they be consis-

tent, merely, with that theory, for that may be true, and yet they may have no tendency to prove the theory." As stated by Justice Van Devanter in that case, "If the facts are consistent with either of two opposing theories, they prove neither." It is also stated in Smith *v.* First National Bank, 99 Mass. 605 (97 Am. D. 59), that "when the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof. A verdict in favor of the party bound to maintain one of those propositions against the other is necessarily wrong." In Vernon *v.* United States, 146 Fed. 121, it was held by the Circuit Court of Appeals of the 8th circuit, in following United States Fidelity & Guaranty Co. *v.* Des Moines National Bank, that "circumstantial evidence is insufficient to warrant a conviction in a criminal case unless it is such as to exclude every reasonable hypothesis but that of guilt of the offense charged, and can not be reconciled with the theory of innocence."

The evidence, with all reasonable deductions therefrom, is as consistent with Taylor's innocence as with his guilt of accepting money as a bribe to influence his official conduct. It can easily be reconciled with the theory of Taylor's innocence. The mere fact that Taylor's official conduct as clerk of the council in stamping, transmitting, and certifying as respects the ordinances and the resolution was necessary to facilitate the achieving of the general result for which he was employed, when considered in connection with the fact that there was no evidence to authorize an inference that it was necessary to the accomplishment of the desired results that the performance of Taylor's official conduct as clerk should be bought and paid for, and that he could have carried out his express contract of employment, which did not call for his exercise of any official duty, without being the clerk of council and without performing any official duty as clerk of council, is perfectly consistent with the theory that Taylor, in accepting the money under the express agreement and contract to accomplish the general results desired, was innocent of accepting the money as a bribe to influence his official conduct as clerk. The evidence therefore does not "exclude every other reasonable hypothesis save that of the guilt of the accused."

As respects the two counts, the one with reference to the construction of the sidewalk, and the other with reference to the exclusion

of territory from inclusion in the proposed city limits; the testimony is positive and undisputed by other positive testimony, and is unimpeached, that Taylor was not employed for the purpose of influencing his conduct as respects his official duties as clerk in stamping ordinances and resolutions of the legislative bodies of the city, etc. Applying the ruling in *Frazier* v. *Georgia Railroad &c. Co.*, 108 *Ga.* 807 (33 S. E. 996), to the evidence as respects these two counts, the circumstances which must necessarily be relied upon before it can be inferred that Taylor in accepting the money was thereby influenced in his official conduct in stamping the ordinances and resolutions, etc., are insufficient to authorize this inference. The ruling in that case reads as follows: "When a plaintiff's right to recover depended upon the establishment of a particular fact, and the only proof offered for this purpose was circumstantial evidence from which the existence of such fact might be inferred, but which did not demand a finding to that effect, a recovery by the plaintiff was not lawful, when by the positive and uncontradicted testimony of unimpeached witnesses, which was perfectly consistent with the circumstantial evidence relied on by the plaintiff, it was affirmatively shown that no such fact existed." See also *Neill* v. *Hill*, 32 *Ga. App.* 381 (2 a) (123 S. E. 30).

While it is true that a transaction which constitutes bribery need not measure up to the requirements of a contract in that, as to the element of guilt, there must be a meeting of the minds of both parties, but that the recipient of money may be guilty of receiving it to influence his official conduct and thereby be guilty of bribery although no such intent may have been in the mind of the giver of the money, yet bribery nevertheless arises out of a dual transaction and necessarily out of negotiations and agreements or understandings between two parties. The determination, therefore, of the guilt of the recipient of the money must necessarily be made with reference to the entire transaction, including the conduct of the person giving it, and the rules with reference to the construction and interpretation of contracts are not inapplicable in determining the guilt or innocence of either party as respects the offense of bribery.

As it impresses me, the conclusion that Taylor's official conduct in the purely ministerial duties of stamping the ordinances and the resolution, etc., was influenced by his acceptance of the money can

be based only upon a mere conjecture—upon a mere possibility— or upon a mere figment of the imagination, and not upon any legitimate inference from the testimony which can be arrived at when due consideration is given to the motives and actions of men and the impulses which influence and direct human conduct.

Furthermore, the charge that Taylor accepted money as a bribe to obtain a settlement of a suit pending against the city is in my opinion barred by the statute of limitations. The solicitor-general, more than two years prior to the finding of the indictment, had knowledge of Taylor's employment and activities in the matter. It is immaterial that the solicitor-general's knowledge in this respect was based upon hearsay only, and that evidence of the alleged crime was not accessible to him.

The general verdict of guilty, which applies to all three counts of the indictment, being without evidence to support it and contrary to law as to one or more of these counts, the verdict should, under the authority of *Innes* v. *State,* 19 *Ga. App.* 271 (91 S. E. 339), be set aside as to all the counts.

Whatever may be Taylor's derelictions, and however guilty he may be proved in some other forum, in a court where only the voice of the law is heard he can not be gone against except by the *"lawful* judgment" of his peers and the *"law.* of the land." Applying the law, as I understand it, to the evidence adduced upon the trial and as it appears here of record, the verdict finding Taylor guilty is not legally authorized as to any one of the counts.

It is not incumbent upon me to express any opinion upon the demurrer to the indictment or upon the various special grounds of the motion for a new trial.

I dissent from the judgment of affirmance.