THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* CARMELO LAFARO, Appellant.

(Argued January 14, 1929; decided February 13, 1929.)

*Frederick E. Hawkes* for appellant. Defendant's motion to dismiss the indictment made at the opening of the case upon the ground that it did not state facts sufficient to constitute the crime charged should have been granted. (*People* v. *Albon,* 140 N. Y. 130; *Rex* v. *Everett,* 8 Barn. & Ald. 114; *People* v. *Rouss,* 63 Misc. Rep. 135; *United States* v. *Gibson,* 47 Fed. Rep. 833; *United States* v. *Van Wert,* 195 Fed. Rep. 974; *Dishon* v. *Smith,* 10 Iowa, 212; *United States* v. *Bayer,* 85 Fed. Rep. 425.) Defendant's motion at the close of the People's case, and at the close of the whole case, should have been granted. (*People* v. *Wagner,* 120 Misc. Rep. 214; 208 App. Div. 828; *People* v. *Alexander,* 183 App. Div. 868; *People* v. *Dumar,* 160 N. Y. 502; *People* v. *Corbalis,* 178 N. Y. 516.) Boyle had no " function " to institute a proceeding in Federal court for a violation of the National Prohibition Act. (*Gambino* v. *United States,* 48 Sup. Ct. Rep. 137; *People* v. *Cook,* 220 App. Div. 110; *People* v. *Conti,* 127 Misc. Rep. 224; *People ex rel. Cosgriff* v. *Craig,* 195 N. Y. 190.)

*George L. Andrews, District Attorney,* for respondent. The facts proven clearly constitute the crime charged in the indictment. (*People* v. *Clougher,* 246 N. Y. 106; *People* v. *Jackson,* 191 N. Y. 293.) It was clearly the public officer's duty and function to institute proceedings in the Federal courts against the appellant. (*Schroeder* v. *United States,* 7 Fed. Rep. [2d] 60; *Greenburg* v. *United States,* 7 Fed. Rep. [2d] 65; *Katz* v. *United States,* 7 Fed. Rep. [2d] 67.)

LEHMAN, J. The defendant has been indicted and convicted upon a charge of bribing a public officer. The indictment alleges that the defendant did offer and give to

a police officer of the village of Waverly, in the county of Tioga, a sum of money "with intention thereby to influence the aforesaid public officer in respect to his acts and decisions in the exercise of his duties and functions in that he, the said Carmelo Lafaro, did then and there ask the said public officer, in consideration of said bribe, to refrain from instituting a criminal proceeding against the said Carmelo Lafaro in the Federal Court of the United States for a violation of the National Prohibition Act."

The evidence produced at the trial is sufficient to sustain this allegation. Lafaro maintained a public billiard room in the village of Waverly. There he sold intoxicating liquor. The village chief of police visited the premises, and found some whisky. The next morning the defendant came to the office of the chief of police. He gave him twenty dollars. According to the testimony of the chief of police, the defendant offered to pay him the further sum of twenty dollars every month.

The village policeman is a public officer of the State of New York. Undoubtedly the evidence is sufficient to establish that the defendant sought to influence him in respect to some act or decision. The police officer, charged with duties in respect to the preservation of the public law and order, was to "let" the defendant continue his unlawful sales of liquor in a billiard room. The defendant did not state with artistic accuracy the consideration which he intended to exact from the police officer, in return for money given and offered. Sales of liquor in a billiard room are expressly prohibited by section 348 of the Penal Law of the State, and the penalty is fixed by section 351. Such sales are also an offense under the National Prohibition Act, and the penalty under that statute is more severe. The defendant told the policeman that if complaints were made that the defendant was selling liquor in his billiard room, the policeman could "get by" by saying that he was without any jurisdiction. It seems to us quite clear that from such testimony the

jury might infer that the defendant paid and offered money to the policeman, a public officer of the State of New York, to influence him not to invoke the provisions of the Federal law against the defendant.

The National Prohibition Act, enacted by Congress in pursuance of the United States Constitution, is part of the law of the land. Its provisions are as binding upon the residents of the State of New York as if they had been enacted by the Legislature of the State of New York. A private citizen of the State might charge the defendant before the appropriate tribunal with an offense under the law of the United States, as well as with an offense under the law of the State of New York. The police officer, when he puts on the uniform of the State, divests himself of no privilege he enjoys, or duty he owes, as a citizen of the United States. Like any other citizen he might charge the defendant before the Federal authorities with an offense under the National Prohibition Act. The offense of which the defendant has been convicted is that he gave money to an officer of the State to induce him to refrain from making such a charge. It is said that in instituting a prosecution against the defendant in a Federal court, the police officer acts only as a citizen; that such an act is not performed in the exercise of powers or functions as a public officer of the State, and that even corrupt influence to cause him to refrain from such an act cannot constitute bribery of a public officer as defined by the Penal Law (Sections 378 and 1822).

A private citizen has the right to institute criminal proceedings against a wrongdoer, and, at times, to arrest without a warrant. He may be called upon to perform certain duties in connection with the enforcement of the law and the preservation of peace and order. In most communities, duties and functions in respect to the preservation of peace and order have been conferred upon public officers to supplement, and under ordinary circumstances, to supplant, action by private citizens.

Such officers in the exercise of their duties and functions are armed with some powers which private citizens do not possess. Blackstone has suggested that n order to avoid the danger of abuse of such powers, it may be well that these officers should remain in ignorance of their extent. (1. Blackstone's Commentaries, page 356.) In this State the Legislature has attempted to meet such a danger, if it exists, by statutory definitions of the *powers* of policemen and other peace officers. The extent of special powers and immunities, conferred upon public officers, and the field for the exercise of such powers may properly be subject to rigid definition; but where a public officer performs an act which any private citizen might do in the same manner, the distinction between official function and private right; between duty owed as an official and duty owed as a citizen, becomes unsubstantial.

The village policeman is an officer of the State of New York, charged with the duty of protecting the peace and order of the State. The National Prohibition Act is the law in the State of New York, for under article VI of the United States Constitution, all laws of the United States made in pursuance of the Constitution are the "supreme Law of the Land." Nevertheless, a violation of the Federal act constitutes no offense against the peace and dignity of the State. (*United States* v. *Lanza*, 260 U. S. 377.) The Federal statutes confer no special powers upon State police officers in the enforcement of the law of the United States. (*Lenski* v. *O'Brien*, 207 Mo. App. Rep. 224.) We assume, without deciding, that the statutes of this State confer upon the officers of the State no powers and do not expressly impose upon them any duties in respect to the enforcement of the constitutional or statutory prohibition of the manufacture, transportation or sale of intoxicating beverages. Where a State officer co-operates with Federal officers in the enforcement of the Federal statute, he must, at least for some purposes, be regarded as a Federal agent. (*Gambino* v. *United*

*States*, 275 U. S. 310.) From these premises the defendant urges us to draw the conclusion that the payment of money as charged in the indictment was not made with intent to influence the police officer in respect to any act in the exercise of his powers or functions as an officer of the State. Though we accept the premises, we re'ect the conclusion.

Under our Federal Constitution, there is a division in the field of governmental authority between State and Nation. For want of a better term we speak of a division or duality of "sovereignty." In English decisions, treatises and statutes, we often find such expressions as the "King's peace" and the "King's justice." Such expressions, of course, mean nothing more than the peace and justice of the realm. Offenses against the peace of community or realm are regarded as offenses against the sovereign. Public officers are the king's officers, and criminal prosecutions are instituted in the name of the sovereign. We have carried these concepts into our own law. In the field where the Constitution allots authority to Congress, the United States takes the place of the King. Offenses against its laws are offenses against the peace and dignity of the United States, and criminal prosecutions are conducted in its name. The officers who execute those laws are officers of the United States. Outside of that field the State takes the place of the King.

Juridical concepts may not blind us to actual conditions. Distinctions based upon the duality of sovereignty in our structure of government do not affect the duty of obedience to all law by all citizens, nor the harm that may come to the peace and order of the community through disobedience of any law. Public officers of the State of New York are required by the Constitution of the State to take an oath that they will "support the Constitution of the United States." Governor Smith, in his memorandum approving the repeal of the State enforcement act, declared that the peace officers of the State are required to enforce the Federal law "with as

much force and vigor as they would enforce any State or local ordinance," though they must take offenders to the Federal courts instead of the State courts for prosecution.

We are not, at this time, called upon to determine the extent of the duty of police officers of the State to enforce a Federal law — or even whether any official, as distinguished from a moral duty, exists. The village police officer, in the course of his unquestioned duty to preserve peace and order, has learned that a Federal statute is being violated. Prosecution in the Federal courts might put an end to this violation. The defendant has sought to induce a public officer, for a corrupt and concealed consideration, to refrain from instituting appropriate proceedings to punish and suppress a violation of a law binding upon all residents of the State. Though we should assume that the law of the State does not require the police officer to suppress a violation of the Federal law, the question still remains whether complaint to the Federal authorities of a violation discovered by the officer in the course of his duty is not part of the function of a State police officer, at least where continued violation tends to affect the public health, morals or order.

The answer to that question seems to us quite clear. The gist of the crime of bribery is the wrong done to the people by corruption in the public service. None can doubt that this defendant sought corruptly to influence a police officer, in the performance of an act which, it is evident, the defendant, the police officer and the Governor of the State considered a public duty owed by a public servant. We have given to the statutory definition of bribery a construction broad enough to cover cases where a public officer has accepted a bribe to act corruptly in a matter to which he bears some official relation, though the act itself may be technically beyond his official powers or duties. (*People* v. *Jackson,* 191 N. Y. 293; *People* v. *Clougher,* 246 N. Y. 106.)

Duties and functions of police officers have never been limited rigidly to the field of law enforcement, in which police officers exercise special powers and enjoy special immunities. Police officers are the guardians of the public peace, but the public is accustomed to look upon them also as the guardians of the comfort, safety and good order of the locality against dangers arising from other causes than offenses against the peace and dignity of the State. No line of demarcation can be drawn definitely. Generally, if not universally, police officers of cities and villages are called upon to perform varied service for the comfort and safety of the public, ranging from assisting old ladies across a highway to the killing of mad dogs or rescuing the drowning. Perhaps well-intentioned citizens might perform many of these services voluntarily, but police officers may be and often are required to perform, as an official function, what well-intentioned private citizens might attempt to do voluntarily. In matters germane to the official functions and duties of police officers there may be a wide scope for the exercise of discretion as to the form and range of services to be rendered; but it can hardly be doubted seriously that a police officer might be directed by his official superior to report violations of a Federal statute to the Federal authorities and that failure to carry out such directions would be an official dereliction.

We have said that "there is to be no traffic in the privilege of invoking the public justice of the State." (*Union Exchange Nat. Bank of N. Y.* v. *Joseph,* 231 N. Y. 250.) In effect the defendant asks us to hold that while traffic with a public officer of the State in the privilege or duty of invoking the public justice of the State undoubtedly constitutes the crime of bribery, traffic with such an officer in the privilege of invoking the public justice of the Nation does not. Such distinctions have no place in the administration of the criminal law. We refuse to read them into the statute. At times violation

of the Federal Prohibition Law may constitute an offense also under the law of the State. (See *People* v. *Vandewater*, 250 N. Y. 83.) In the present case, too, the defendant's sale of intoxicating liquor in a billiard room constituted an offense against both State and Nation. Clearly, under such circumstances, a decision to institute proceedings in the Federal courts to end an act which disturbs the peace and order of the community cannot be said to be wholly outside of the functions of the police officer. Even where the act which violates the Federal statute is not a violation of any law of the State, in a broad sense, the public peace and order may yet be disturbed by violation of any law, regardless of its source.

If enforcement of State law is confided solely to the public officers of the State, and the enforcement of the Federal law is confided solely to the public officers of the United States, then in the interests of the community there may well be co-operation between the two. At least, we may say that such co-operation in the interests of the public is not outside the functions of officers to whom law enforcement has been confided. Otherwise the complications inherent in our system of dual sovereignty would become intolerable. Bribes offered to police officers to refrain from co-operation with Federal authorities must bring corruption into our police force. We will not impute to the Legislature any intention that narrow distinctions should be drawn between traffic with a public officer affecting the peace, order and justice of the State, and traffic with the same officer affecting the peace, order and justice of the United States, where the purpose and the natural effect of the act is to corrupt the police of the State.

For these reasons the judgment affirming the defendant's conviction should be affirmed.

CARDOZO, Ch. J., POUND, CRANE, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment affirmed.