In the Matter of Charges Preferred against DOMINICK DEAN, a Policeman Connected With the Central Police Station, Assigned to Prospect Park. DOMINICK DEAN, Appellant; WILLIAM HUTTON, JR., as Commissioner of Public Safety of the City of Troy, Respondent.

Order affirmed, with costs. Van Kirk, P. J., Hinman, Whitmyer and Hill, JJ., concur; Hasbrouck, J., dissents, with an opinion.

HASBROUCK, J. (dissenting). Prior to the trial of Patrolman Dean, Sergeant Cassidy was tried and dismissed from the police force at Troy for having unwarrantably and illegally arrested one Lou Wah and brutally beaten him while under arrest. This offender was punished and the law vindicated. Now the patrolman who was with his sergeant has been accused and held for participating in the arrest and in the beating of the complainant and on the further charge of not restraining his superior officer when he was engaged in beating the complainant. The deprival of a man of his life calling, the calling for which he has been educated, the calling upon which he and his wife and children rely for support, education and maintenance, it will be conceded should not be done lightly. It may be premised that the relation between Sergeant Cassidy and Patrolman Dean in the transaction under consideration was not that Dean was an accessory for he is not here to answer to a criminal charge nor that of an agent making him responsible for his superior's wrong. Therefore, Dean's responsibility for the acts of Cassidy can only be predicated upon his participation in them or upon his subordination to his sergeant. *First*, therefore, it appears that Dean did not participate in the arrest of Wah. The description of the arrest was given by Wah. He testifies Cassidy says, " ' I'll have to arrest you,' and I said, ' why.' He grabbed me by the neck and gave me a punch in the jaw * * * then he took me out on the sidewalk." ` Wah further testifies: " Q. He [Cassidy] had hold of your neck with both hands? A. Yes, sir. Q. Were you resisting him at the time. Were you refusing to go with him? A. No, I didn't refuse. I asked him ' what did you arrest me for? ' " This arrest was made in Wah's chop suey restaurant and it was after Cassidy had laid his money on the counter at which Dean also was standing. Was the arrest completed when the sergeant declared his purpose and laid hold of Wah and Wah did not refuse to go with him? (2 Bouv. Inst. § 1803.)■ The find-

ing of the commissioner of safety that Dean participated in the arrest is, that Dean held Wah's arms while Cassidy was taking him out on the sidewalk. What Wah meant as will be shown later was that Dean took hold of one of Wah's arms in taking him to the station house. It is quite apparent that unless Dean participated because he looked on while his superior made the arrest Dean had no part in the arrest. The next finding of the commissioner of safety is that Dean assaulted Wah. There is no charge that Dean assaulted Wah. All that is charged or testified to is that Dean held Wah's arms. Dean was not charged with assault because the drawer of the charges did not consider the holding of the arms in the same light as striking, beating and kicking. The fact is that Dean did not participate in any assault. What he did after the arrest was to take hold of Wah's arm. The trouble with the commissioner of safety's decision is that he has held the taking hold of one arm in the progress of the prisoner from the place of arrest to the station house was an assault. Again let us take Wah's own testimony. One need not point out the difficulty the complainant was laboring under in the use of the singular and plural in our language. " Q. How did he take you out on the sidewalk? A. He grabbed my collar. Q. What was Dean doing this time? A. Dean held my arms. Q. When they got you out on the sidewalk the second time, then what? A. They had two hands on me by the neck. Q. Do you mean that each officer had both hands around your neck? A. No, only one officer." With reference to taking him to the station house: " Q. Which way did they go? A. The two policemen grab me and take me across the way in front of the Mayo Hotel and they gave me a beating. Q. Who gave you the beating? A. Mr. Cassidy. * * * He hit me in the head with his hand. Q. Where did you go then? A. They took me to Sixth Avenue and they hit me * * * and I lay on the sidewalk and they kick me. Q. Who kicked you? A. Mr. Cassidy. Q. Was he [Cassidy] striking you the time that he was taking you out and back and out again? A. No. he didn't beat me that time. Just choked my neck. * * * Q. Did officer Dean take hold of Sergeant Cassidy at any time? A. No. Q. When I say, ' at any time ' I mean from the time this trouble started till you were brought to the station house? A. He [Dean] was only holding my arm." How deeply the accused may have suffered from testimony in which the complainant meant " one " when he said " they " or " both " resulting in his dismissal is quite obvious. When Wah said Dean held my " arms " I think he meant as he testified on the trial of Dean " one " arm. Need it be argued that the duty of the patrolman was to help his superior take his prisoner to the station house and that he had the right to lay his hand upon Wah's arm for such purpose at least? There is no evidence that the holding of Wah's arm acted as any constraint upon him in defending himself or was at all reprehensible. Can one say if taking hold of Wah's arm was restraint that it was not the patrolman's duty? Suppose that after the arrest and while on the way to the station house Wah had drawn a knife or a gun and injured or killed the sergeant because Dean did not hold Wah's arm? Ought not Dean to be held guilty on a charge of neglect of duty? The finding by the commissioner of safety of assault on the part of Dean seems to be supported only by evidence of the wanton brutality of Cassidy and not by any evidence against Dean. The suggestion that Dean was off duty is not regarded as important. If he were off, Sergeant Cassidy could call Dean to his assistance. In any event Dean was always the patrolman, not duty bound while at rest, recreation or sleep.

(Second Class Cities Law, § 142; *Hart* v. *Kennedy*, 39 Barb. 186, 190; *People* v. *LaFaro*, 250 N. Y. 336, 342; *People ex rel. MacNish* v. *Waldo*, 212 id. 348.) The final charge against Dean is that he neglected to restrain Cassidy from beating Wah; that he failed to protect Wah. It will be seen from the language of the charge and from the examination of the complainant that the real question at issue arises over whether it was Dean's duty to prevent the sergeant assaulting Wah and to protect Wah from such assaults. It seems to me the accused was confronted by a dilemma. The rebuke or physical restraint by Dean of the sergeant involved rendering himself liable to be charged with insubordination to a superior officer. (*People ex rel. MacNish* v. *Waldo, supra; People ex rel. Dillon* v. *Metropolitan Police,* 24 How. Pr. 481.) The refusal or neglect to do so has resulted in the charge of unfitness of Dean for his office. The question arises when may a patrolman interfere with the conduct of his superior? No doubt if he were drunk, insane or engaged in the perpetration of a felony such conduct might be proper. But with none of such conditions present could Dean place his superior on trial and determine when his sergeant should be defied, when restrained, when evicted from his office? Could Dean in the restaurant or on the sidewalk pass a judgment on his superior officer that the commissioner of safety can only pronounce after the making of charges and a trial thereon? The establishment and maintenance of a police force has for its purpose the protection of property and the safety of the citizen. It stands for order in society. Such a force must have order and maintain it in its own organization. It must be officered like an army. Discipline must characterize it and the obedience of the inferior to the superior. Since in the main there is much similarity between the force to keep the peace among the inhabitants of a country and the force to protect it from dissolution or invasion, what has been said about the army may be illuminating. Mr. Justice BREWER of the United States Supreme Court wrote: " An army is not a deliberative body. It is the executive arm. Its law is that of obedience. No question can be left open as to the right to command in the officer, or the duty of obedience in the soldior." (*Matter of Grimley,* 137 U. S. 147, 153.) In light of the reasons which required subordination on the part of Dean, was the commissioner of safety right in condemning him for neglecting to restrain his superior officer? The statement of the principle in connection with the admitted facts furnishes the answer. Any other conclusion would throw the police system of the State into a condition of chaos. This principle has been established beyond dispute that where an accused has been found guilty of several delinquencies and he is found on appeal not to have been guilty of one of such delinquencies, the remedy is a reversal and a new trial. (*People ex rel. Reardon* v. *Partridge,* 86 App. Div. 310; *Baldwin* v. *Burrows,* 47 N. Y. 199, 205; *People ex rel. Miller* v. *Peck,* 73 App. Div. 89.) It is only within the competence of the commissioner to determine whether Dean should be dismissed from the force if found guilty only of one or two of the three charges. We cannot decide the matter here and it has not been decided. It must be borne in mind that Dean did not strike, hit, punch or kick Wah. He did not cause the lump on his jaw, the marks in his neck, rib or back. He is to be removed, if that be his fate, for not knowing what his duty was in connection with the arrest and in restraining his superior officer. The commissioner of safety has set the law in operation to remove Dean. The evidence does not support his findings. Dean's conduct in yielding submission to his superior was required of him by the law which char-

acterizes the administration of police systems the world over. It would constitute an ineffable irony to punish him for doing his duty. I recommend the reversal of the order and the reinstatement of the appellant with pay from the date of his removal.