## SIEGAL v. UNITED STATES.

### No. 5633.

Court of Appeals of the District of Columbia.

Argued Oct. 3, 4, 1932.

Decided Nov. 7, 1932.

E. Russell Kelly, of Washington, D. C., for appellant.

Leo A. Rover, of Washington, D. C., for the United States.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

The appellant is an attorney at law and has practiced for a number of years in the courts of the District of Columbia and other places. On June 16, 1931, he was indicted upon a charge of bribery, under section 861 of the Code of Laws of the District of Columbia (D. C. Code 1929, T. 6, § 134), which reads as follows:

Sec. 861. "*Bribery.*—Whoever promises, offers, or gives, or causes or procures to be promised, offered, or given, any money or other thing of value, or makes or tenders any contract, undertaking, obligation, credit, or security for the payment of money, or for the delivery or conveyance of anything of value, to any executive, judicial, or other officer, or to any person acting in any official function, or to any juror or witness, with intent to influence the decision, action, verdict, or evidence of any such person on any question, matter, cause, or proceeding or with intent to influence him to commit or aid in committing, or to collude in or allow any fraud, or make any opportunity for the commission of any fraud, shall be fined not more than five hundred dollars, or be imprisoned not more than three years, or both."

The indictment alleges in substance that on March 18, 1931, one Harry S. Deane was a public officer of the government of the District of Columbia employed in the capacity of a guard at the Washington Asylum and Jail, and as such was charged particularly with the duty of maintaining and conducting the identification bureau of that institution, and as such had the duty of keeping a certain system of records pertaining to the detention of prisoners therein and of the names of such prisoners and the dates and times of their confinement; that appellant on said day was acting as attorney for one Damiani, who was then under indictment upon a charge of murder alleged to have been committed on February 28, 1928, in the state of Pennsylvania; that the appellant intending falsely and corruptly to show that Damiani was at the date of said crime confined as a prisoner in the Washington Asylum and Jail, and intending to cause the said Deane to extract from the records of the said identification bureau the card of another person who was a prisoner incarcerated therein in the months of January and February, 1928, and to insert in lieu thereof falsely and corruptly a card bearing the name of Damiani, purporting to show that Damiani was a prisoner in said jail on February 28, 1928, and intending to prostitute and betray the duties of said office and employment of said Deane in violation of his lawful duties, did give to said Deane as a bribe and pecuniary reward therefor the sum of $250 in lawful money of the United States.

The defendant was tried, convicted, and sentenced, and now appeals to this court.

Appellant contends that there was no credible or substantial evidence introduced by the prosecution sufficient to warrant submission of the case to the jury and that the verdict was contrary to the overwhelming weight of the credible evidence in the case.

We think the record discloses sufficient credible evidence to sustain the verdict of guilty.

The witness Deane testified in substance that he had charge of the identification bureau of the District jail; that his duties were taking finger prints, classifying them and

filing them, gathering the records of the prisoners, and putting them in their jackets; that he has known the defendant for six or seven years; that several days prior to March 14, 1931, he met the defendant in the rotunda of the jail, and the defendant asked him what his duties were; that he told the defendant that he was the record man and the identification man at the jail, filing records, and so forth; that the defendant asked him if it would be possible for him to find the record of a man who had been committed a couple of years previous, and he told the defendant, "Yes, that was a part of his job"; that the defendant then said, "I may want you to do something for me in that line. I will talk to you later"; that several days afterwards the defendant talked to him again about these records and asked him if he would be at home the next day, which was Sunday, and the defendant asked him to take a couple of blank commitment cards from the jail and carry them home with him that night, so that he would have them the next day; that there were some commitment cards lying on his desk at that time which were part of the official records of the jail; that the defendant called the witness up on March 15th and asked him if he would be ready to take a little ride in a short time, and witness answered, "Yes"; that the defendant then came to his house a half hour later and witness got in defendant's car with him and they took a ride; that they parked in a vacant square to talk and witness gave defendant the blank commitment cards he had brought with him; that the defendant asked him numerous questions about the proper way to fill the card up and that witness told the defendant how to fill them up and what went into certain places, etc.; that the defendant asked him if it would be possible to put a fake record in the file for a date, covering January 29, 1928, until February 28, 1928; that he told the defendant in order to do that "we would have to take a record out of the files in order to make room for the one we put in"; the defendant asked witness if he could do this, and witness answered, "Yes"; that defendant told witness he wanted to cover up that period for a client of his; that the defendant was to receive a fee of $2,000 and that he would split 50-50 with the witness providing he would put the record in; the defendant gave him to understand that the man was in New Orleans, and asked, "Supposing this man is in New Orleans and this record were called for from the District jail, who would go with that record?" He said he thought perhaps Colonel Peake would go; that defendant said, "If he could not make a living as a lawyer and the witness could not make a living with fingerprints, why, we had to make a living some other way." On Monday afternoon following, defendant came to the jail and witness told him that he had not done anything yet in regard to the matter, and on Tuesday he told defendant the same thing; on Wednesday the defendant came to the jail, asked him what he had done; he told the defendant he had not done anything as yet, and the defendant said, "Well, get busy." Defendant pulled a roll of money out of his pocket and said, "I am just waiting to split with you just as soon as you do your stuff"; that the witness produced two identification cards, one being the genuine card showing the incarceration of a prisoner named Williams for intoxication on January 30, 1928, the other being the fictitious card to be substituted therefor showing the pretended incarceration of Damiani as a fugitive from justice on January 30, 1928, each card bearing the number 6862, and each signed or purporting to be signed by the prisoner therein named. Defendant told him to put the Damiani card in the file, and mentioned that witness would have to put this little sentence at the bottom "released to Detective Sergeant O'Brien" before putting it in the file; defendant told witness that O'Brien was since deceased; that defendant then gave witness $250 and witness gave the defendant this card and jacket and the defendant looked them over; that the jail number now in red stamp on the card was not there at that time; that he told the defendant he would have to put that jail number on because the consecutive numbering stamp "which we were using at the jail" then had purple ink in it, whereas at the present time it had red ink. The defendant then asked witness how he was going to put it on there and he told the defendant to buy a stamp if necessary. The defendant took the card and jacket as it is now with him that night; that this occurred on the night the defendant gave him the money; he received $250— one $100 bill, five $20 bills, and five $10 bills. That the witness gave the money to Col. Peake the next morning; that the defendant brought back the card to the witness on Thursday the 19th and the jacket on Saturday the 21st; that witness knew at the time that he took these Damiani cards back from the defendant that no man by the name of Damiani had been confined in the Washington Asylum and Jail in January and February of 1928; that the defendant said to

the witness that Damiani was not there; that the defendant said he wanted to place Damiani there as an alibi, but did not say for what; that witness saw the $250 again after he had turned it over to Col. Peake, when Col. Peake gave it back to him on Monday morning, and he gave it to J. Edgar Hoover, of the Department of Justice, and it was afterwards returned to the witness; that he remembers bringing the money to the grand jury in the District of Columbia; that the money which the defendant gave him was for the purpose of substituting these records; that he remembers that he talked to Col. Peake about this matter before the actual substitution took place on Monday morning the 16th of March, 1931.

The character of the witness Deane for truth and veracity was not impeached. On cross-examination, however, he testified that he had at one time been employed by the American Railway Express Company and had resigned at a time when some whisky was missing from the vault, and the subject was under investigation.

The record contains the testimony of numerous witnesses, including that of appellant. Some of this contradicts and some confirms the testimony of Deane. We have considered all of the evidence in the record, but find it unnecessary to discuss it in detail in this opinion. We are fully convinced that the verdict of the jury is justified by the evidence.

It is contended by appellant that the indictment fails to charge a crime within the terms of the statute. We think this contention unfounded. Deane was a person acting in an official function, exercising by delegation a part of the official authority possessed by the superintendent of the jail. If Deane had corruptly accepted the money, he would have been guilty of accepting a bribe to influence his official conduct. Fall v. United States, 60 App. D. C. 124, 49 F.(2d) 506. The bribe offered Deane was designed to influence his action on a matter committed to his official conduct and control, with intent to influence him to commit a fraud and to make an opportunity for the defendant to commit a fraud. See Benson v. United States, 27 App. D. C. 331; Fletcher v. United States, 42 App. D. C. 53, 65; People of State of New York v. Lafaro, 250 N. Y. 336, 165 N. E. 518; People v. Jackson, 191 N. Y. 293, 84 N. E. 65, 15 L. R. A. (N. S.) 1173, 14 Ann. Cas. 243.

Appellant also claims that certain remarks of the District attorney made at the trial in the hearing of the jury constitute prejudicial error. We do not think that the remarks complained of could have exerted any influence upon the jury. Moreover, appellant took no exception to the court's charge to the jury, which therefore must have fully and fairly explained the issues in the case.

Judgment affirmed.