674 A.2d 513

**DEPARTMENT OF PUBLIC SAFETY and Correctional Services**

**v.**

**Randolph B. BERG**

No. 120, Sept. Term, 1994.

Court of Appeals of Maryland.

April 9, 1996.

Carmen M. Shepard, Assistant Attorney General, (J. Joseph Curran, Jr., Attorney General, on brief) of Baltimore, for appellant.

Robert C. Brown of Ellicott City, for appellee.

Argued before ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL, RAKER, and JOHN F. McAULIFFE, (Retired and Specially Assigned), JJ.

ELDRIDGE, Judge.

We issued a writ of certiorari in this case to decide whether the State Police erred in disapproving an application to purchase a handgun on the ground that the transaction would constitute a violation of federal law.[1]

## I.

In March 1993 Randolph Berg, a resident of Maryland, submitted an application to purchase a handgun from a gun dealer in Carroll County, Maryland. The handgun was a Smith and Wesson 10 mm semi-automatic. Pursuant to Mary-

---

1. At the time this controversy arose, the "Maryland State Police" was an agency in the Department of Public Safety and Correctional Services. By Chs. 165 and 166 of the Acts of 1994, the agency was taken out of the Department of Public Safety and Correctional Services and was made a principal department of the state government known as "The Maryland State Police." By Ch. 3 of the Acts of 1995, the name was changed to "The Department of State Police." We shall in this opinion refer to the agency as the "State Police" or simply the "State."

land Code (1957, 1992 Repl.Vol., 1995 Cum.Supp.), Art. 27, § 442(b), a seven day waiting period is imposed on a prospective buyer of a pistol or revolver from a gun dealer while the information supplied by the applicant is reviewed by the State Police. Berg's application included a statement that, *inter alia,* he had never been convicted of a violation of Maryland Code (1957, 1992 Repl.Vol., 1995 Cum.Supp.), Art. 27, §§ 286, 286A, or 286C, which prohibit the distribution, importation, manufacture, etc., of controlled dangerous substances.[2]

After Berg completed the application, the gun dealer, as required by Art. 27, § 442(d)(2), forwarded the application to

---

**2.** Maryland Code (1957, 1992 Repl.Vol., 1995 Cum.Supp.) Art. 27, § 442(f), provides:

"*(f) Same—Information required.*—The application to purchase or transfer shall contain the following information:

(1) Applicant's name, address, occupation, place and date of birth, height, weight, race, eye and hair color and signature. In the event the applicant is a corporation, the application shall be completed and executed by a corporate officer who is a resident of the jurisdiction in which the application is made.

(2) A statement by the applicant that he or she:

(i) Has never been convicted of a crime of violence, in this State or elsewhere, or of a violation of any of the provisions of §§ 286, 286A or 286C of this article or any conspiracy to commit any crimes established by those sections, or of any of the provisions of this subtitle.

(ii) Is not a fugitive from justice.

(iii) Is not a habitual drunkard.

(iv) Is not an addict or a habitual user of narcotics, barbiturates or amphetamines.

(v) Has never spent more than thirty consecutive days in any medical institution for treatment of a mental disorder or disorders, unless there is attached to the application a physician's certificate, issued within thirty days prior to the date of application, certifying that the applicant is capable of possessing a pistol or revolver without undue danger to himself or herself or to others.

(vi) Is at least 21 years of age as required by federal law.

(vii) Has or has not submitted a prior application and, if so, when and where.

(3) The date and hour the application was delivered in completed form to the prospective seller or transferor by the prospective purchaser or transferee."

the State Police which initiated a background investigation.[3] After this investigation was completed, Berg was notified by letter that his application had been disapproved. Although no reasons were given for the denial of the application, the letter stated that Berg could request a hearing in accordance with § 442(i).[4]

---

**3.** Code (1957, 1992 Repl.Vol., 1995 Cum.Supp.), Art. 27, § 442(g), sets forth the procedure to be followed by the State Police in verifying the information provided by the applicant:

*Investigation of application; procedure when false information is discovered or application is incomplete.*—The Secretary of the State Police may request the assistance of the police commissioner of Baltimore City, the chief of police in any county maintaining a police force, or the sheriff in a county not maintaining a police force and shall promptly upon receipt of an application to purchase or transfer conduct an investigation in order to determine the truth or falsity of the information supplied and statements made in said application. If it be thereupon determined that any false information or statement has been supplied or made by the applicant, or that the application has not been properly completed, the Secretary or any specific member of the State Police authorized by the Secretary to act as the Secretary's agent in matters relating to pistol or revolver sales shall notify the prospective seller or transferor, in writing, within seven days from the date of the executed application to purchase or transfer was forwarded by certified mail, or his disapproval of said application. Written notification of such disapproval shall be thereafter forwarded by the Secretary or the Secretary's duly authorized agent or agents to the prospective purchaser or transferee. The date upon which the executed application to purchase or transfer was forwarded by certified mail by the prospective seller or transferor shall be considered as the first day of the seven-day period allowed for notice of disapproval to the said prospective seller or transferor. If the seventh day of the seven-day period allowed for the said notice of disapproval shall fall on a Sunday or legal holiday, the computation period shall be extended to the first day next following, which is neither a Sunday nor a legal holiday."

**4.** Code (1957, Repl.Vol.1992, 1995 Cum.Supp.), Art. 27, § 442(i), provides in pertinent part as follows:

*(i) Hearing; judicial review.*—(1) Any prospective purchaser or transferee aggrieved by the action of the Department of State Police may request a hearing within 30 days from the date when written notice was forwarded to the aggrieved person by writing to the Secretary of the State Police, who shall grant the hearing within fifteen days of the request.

(2) The hearing and subsequent proceedings of judicial review, if any, thereupon following shall be conducted in accordance with the provisions of the Administrative Procedure Act."

Following the disapproval, Berg requested a hearing, and, in June 1993, Berg and his attorney attended a hearing at the State Police barracks in Westminster, Maryland. At the beginning of the hearing, the hearing officer stated that a routine background check showed that, in 1990, Berg had been convicted in the Circuit Court for Howard county, upon a guilty plea, of violating Art. 27, § 287, by having possession of cocaine. The offense carries a maximum sentence of four years imprisonment. As a result of this conviction, Berg received a suspended sentence of four months and two years probation. According to the hearing officer, this conviction served as the basis for the State Police's disapproval of Berg's application to purchase a handgun.

■ Although Berg's conviction for possession of cocaine was neither required to be reported on his application to purchase the handgun nor one of the statutorily enumerated offenses listed in Art. 27, § 445, that bars a handgun purchase under state law, the hearing officer pointed out that federal law prohibits the sale, receipt, and possession of a handgun when a prospective buyer has been convicted of a crime that is punishable by imprisonment for a term of more than one year. Specifically, the hearing officer relied on the Gun Control Act of 1968, 18 U.S.C. § 921 *et. seq.,* which, *inter alia,* prohibits a gun dealer from selling a handgun to any person who has been convicted of a crime punishable by imprisonment for a term exceeding one year and also prohibits any person who is convicted of such a crime from possessing or receiving any handgun.[5] Thus, according to the hearing officer, if the State

---

5. The relevant provisions of 18 U.S.C. § 922 state as follows:

"(d) It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person—
(1) is under indictment for, or has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year;

  *   *   *   *   *   *

"(g) It shall be unlawful for any person—

Police were to approve Berg's application, the State Police would be sanctioning a violation of federal criminal law.[6]

At the hearing, Berg's attorney argued that federal law was inapplicable, that federal law could be applied only if state law adopted the federal statute by reference, that the federal statute could be validly applied only when there was some involvement with interstate commerce and, in this case, there was no such involvement, and that there was a procedure under the federal statute for granting relief from the prohibition. The hearing officer rejected these arguments and disapproved Berg's application. The hearing officer stated, however, that if Berg received either a pardon from the Governor or a grant of relief from the federal Bureau of Alcohol, Tobacco, and Firearms pursuant to the federal statute, his application would be approved.

Berg filed in the Circuit Court for Carroll County an action for judicial review of the administrative decision. In the circuit court, Berg principally argued that "the applicable federal handgun law ... contains an interstate ... commerce

---

(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

\* \* \* \* \* \*

"to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

The language "crime punishable by imprisonment for a term exceeding one year" does not include "any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less." 18 U.S.C. § 921(a)(20). Although Berg's conviction under Maryland Code (1957, 1992 Repl.Vol., 1995 Cum. Supp.), Art. 27, § 287, is classified as a misdemeanor, it carries a maximum penalty of four years imprisonment. Thus, Berg's conviction is within the federal ambit of a "crime punishable by imprisonment for a term exceeding one year." *See United States v. Schoolcraft*, 879 F.2d 64, 69 (3d Cir.), *cert. denied*, 493 U.S. 995, 110 S.Ct. 546, 107 L.Ed.2d 543 (1989) (§ 922(g) "does not require the defendant to have been convicted of a felony, but only of a crime punishable by imprisonment for a term exceeding one year," excluding "misdemeanor[s] punishable by a term of imprisonment of two years or less").

6. The penalties for violations of the Gun Control Act of 1968 include both fines and imprisonment. *See* 18 U.S.C. § 924.

requirement for the law to apply," and, as a Maryland resident wishing to purchase a handgun from a Maryland gun dealer, Berg's transaction involved only intrastate commerce. Therefore, Berg contended, the federal statute, as a matter of statutory interpretation, was not applicable to this transaction. Berg alternatively argued that the statute could not constitutionally be applied to the transaction. In addition, Berg reiterated the other arguments which he had made at the administrative hearing. Since Berg's conviction was not disqualifying under the Maryland statute, Berg maintained that his application should be approved.

Following a hearing, the circuit court issued a written opinion and an order reversing the decision of the State Police and remanding the case to the State Police for further proceedings in accordance with the court's opinion. Initially in its opinion, the circuit court rejected Berg's interstate commerce argument, holding "that there is no need for an interstate nexus to be shown" and that the federal statute was within congressional power under the Commerce Clause.[7] The circuit court expressed some doubt about the propriety of the State Police enforcing federal law, although the court did not overturn the agency decision on this ground. Rather, the court reversed the administrative decision because the agency "erroneously interpreted and applied the federal law." The circuit court thus stated:

> "[Berg] contends that there is no justification for the Maryland State Police to be enforcing, by their own mandate, Federal firearms law. The [State] responds by stating that the State Police have the duty to 'detect and prevent the commission of crime.' Md.Code Ann.Art. 88B, § 3. However, this is only a limited portion of the overall 'duties' set forth in the statute. The statute also provides that the 'Department shall have the general duty ... to cooperate with and assist law enforcement agencies in carrying out their respective duties.'

---

7. Article I, § 8, cl. 3, of the Constitution of the United States.

"In the present case, the [State] did not 'cooperate and assist' the Federal authorities in the enforcement of 18 U.S.C. § 922. Rather, the State Police 'assumed' the responsibilities of the Federal Bureau of Alcohol, Tobacco and Firearms ... by electing to enforce a federal regulation. Unfortunately, the [State] erroneously interpreted and applied the Federal law and, as such, a reversal is mandated."

In explaining why the State Police and the hearing officer erroneously interpreted and applied federal law, the circuit court first quoted 18 U.S.C. § 925(c), which authorizes a grant of relief from the prohibition as follows:

"(c) A person who is prohibited from possessing, shipping, transporting, or receiving firearms or ammunition may make application to the Secretary [of Treasury] for relief from the disabilities imposed by Federal laws with respect to the acquisition, receipt, transfer ... or possession of firearms, and the Secretary may grant such relief if it is established to his satisfaction that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to the public safety and the granting of the relief would not be contrary to the public interest...."

From this provision, the circuit court concluded that the hearing officer was required to consider the factors enumerated in § 925(c) and decide whether circumstances in Berg's case justified "relief from the disabilities imposed by Federal laws." In so concluding, the court stated:

"[I]t is abundantly clear that [the hearing officer] was of the erroneous opinion that the Federal statute mandated a denial in *all* cases where the applicant had been convicted of a two (2) year state misdemeanor. However, a careful reading of the Federal statute reveals that this simply is *not* the case.

\* \* \* \* \* \*

"[I]t is readily apparent that hearing officer may consider the circumstances of the conviction and the applicant's general standing in the community. However, the record in

the present case amply demonstrates that no such consideration was undertaken in the present case."

Since the State Police failed to consider the federal statutory factors which would authorize relief from the prohibition, the circuit court directed the State Police, upon remand, to evaluate the circumstances surrounding Berg's conviction. The agency was ordered to decide, pursuant to the factors set forth in 18 U.S.C. § 925(c), whether Berg would likely act in a manner dangerous to public safety.

The State appealed to the Court of Special Appeals, and, prior to oral argument in that court, we issued a writ of certiorari. The State argues that it is appropriate for the State Police to disapprove an application to purchase a handgun where the applicant's receipt or possession of the handgun would violate federal law. The State also contends that the circuit court erred in requiring the State Police to determine whether Berg should be granted relief under 18 U.S.C. § 925(c). The State points out that the federal statute gives such authority exclusively to the Secretary of the Treasury or the Secretary's designee, and the Secretary's only designee is the Director of the Bureau of Alcohol, Tobacco and Firearms.[8] The respondent Berg, in addition to disagreeing with the State's arguments, contends that the federal statute cannot be applied to the transaction in this case because of the absence of an interstate commerce nexus.

## II.

The first issue that we shall address is whether the State Police erred by enforcing federal law.

Both state and federal courts take the position that it is appropriate for state and local law enforcement officials to enforce federal law. The leading case is *Marsh v. United*

---

8. The Secretary of the Treasury is authorized to delegate his authority under the federal statute, *see* 18 U.S.C. § 921(18). By 27 C.F.R. § 178.144, the Secretary has delegated to the Director of the Bureau of Alcohol, Tobacco and Firearms the responsibility of granting relief from the statutory prohibition.

*States,* 29 F.2d 172 (2d Cir.), appeal dismissed, 277 U.S. 611, 48 S.Ct. 563, 72 L.Ed. 1015 (1928), *and cert. denied,* 279 U.S. 849, 49 S.Ct. 346, 73 L.Ed. 992 (1929), in which the Circuit Court of Appeals for the Second Circuit, in an opinion by Judge Learned Hand, held that a New York state trooper was authorized, under both state and federal law, to arrest the defendant for a federal misdemeanor committed in the trooper's presence, namely a violation of the National Prohibition Law. After pointing out that "it has been a universal practice of police officers in New York to arrest for federal crimes," 29 F.2d at 173, Judge Hand continued (*id.* at 174):

"Section 2 of article 6 of the [United States] Constitution makes all laws of the United States the supreme law of the land, and the National Prohibition Law is as valid a command within the borders of New York as one of its own statutes. True, the state may not have, and has not, passed any legislation in aid of the Eighteenth Amendment, but from that we do not infer that general words used in her statutes must be interpreted as excepting crimes which are equally crimes, though not forbidden by her express will. We are to assume that [New York] is concerned with the apprehension of offenders against laws of the United States, valid within her borders, though they cannot be prosecuted in her own courts."

The court in *Marsh* went on to hold that it would not attribute to Congress an intent to restrict enforcement to federal government officials or to the administrative machinery set forth in the federal statute, saying (*ibid.*):

"It may be that the United States, in respect of such arrests, is limited by the law of the state where the offender may be; but it would be unreasonable to suppose that its purpose was to deny to itself any help that the states may allow. Again, the uniform practice is persuasive. Other considerations forbid any such implication from the powers of arrest given to prohibition officers under section 26 of the National Prohibition Law. The Eighteenth Amendment gave concurrent jurisdiction to the states, and it would be in conflict with its underlying purpose to assume that, so far as the state laws assist in its enforcement, they were to be

curtailed by any administrative system which Congress might set up. The purpose of such a system was to secure obedience as far as possible; it cannot be supposed that, within a state which has no independent system of her own, such co-operation as she does extend must be rejected."

The Supreme Court of Arizona, in *Whitlock v. Boyer*, 77 Ariz. 334, 338, 271 P.2d 484, 487 (1954), held that municipal police officers of Prescott, Arizona, were authorized to arrest two persons for attempting to pass counterfeit currency in violation of a federal statute. The Arizona court simply quoted from *Marsh v. United States, supra*, 29 F.2d at 173, and stated that the *Marsh* holding represented Arizona law. *See also, e.g., United States v. Janik*, 723 F.2d 537, 548 (7th Cir.1983) ("We infer that Illinois officers have implicit authority to make federal arrests"); *United States v. Swarovski*, 557 F.2d 40, 47 (1977), *cert. denied*, 434 U.S. 1045, 98 S.Ct. 889, 54 L.Ed.2d 796 (1978) ("We are entirely unpersuaded that the Legislature of the State of New York, in recodifying the criminal procedure law and the penal law of the State, either intended to or did in fact, dissolve all participation by the executive ... branch[ ] of the State government in dealing with federal criminal offenses"); *Farley v. United States*, 381 F.2d 357, 358 (5th Cir.), *cert. denied*, 389 U.S. 942, 88 S.Ct. 303, 19 L.Ed.2d 295 (1967) ("We would be surprised if a state officer could not legally arrest a person who has committed a federal felony"); *Bircham v. Commonwealth*, 238 S.W.2d 1008, 1016, *cert. denied*, 342 U.S. 805, 72 S.Ct. 55, 96 L.Ed. 609 (1951) (defendant was engaged "in the commission of a [federal] felony in the presence of the [municipal police] officers attempting to take him in custody. It not only was their right, it was their duty, to arrest him"); *People v. Lafaro*, 250 N.Y. 336, 165 N.E. 518 (1929); *United States v. Leland*, 376 F.Supp. 1193, 1200–1201 (D.Del.1974) ("it is beyond controversy that a state law enforcement officer can detain and arrest an individual for a federal violation if he has probable cause to believe the individual committed the offense").

■ Although the Supreme Court of the United States has apparently not discussed and ruled upon the issue directly, several of its decisions rest upon the premise that it is appropriate for state officers to enforce federal law. *See, e.g., Miller v. United States*, 357 U.S. 301, 305, 78 S.Ct. 1190, 1193–1194, 2 L.Ed.2d 1332, 1336 (1958) (arrest for federal offense by municipal police officer, and the Court stated that, in the "circumstance of an arrest for violation of federal law by state peace officers, . . . the lawfulness of the arrest without warrant is to be determined by reference to state law"); *United States v. Di Re*, 332 U.S. 581, 589, 68 S.Ct. 222, 226, 92 L.Ed. 210, 217 (1948) (a municipal police department detective arrested the defendant for possessing counterfeit gasoline ration coupons in violation of a federal statute, and the Court held "that in absence of an applicable federal statute the law of the state where an arrest without warrant takes place determines its validity"). *See also Ker v. California*, 374 U.S. 23, 37, 83 S.Ct. 1623, 1632, 10 L.Ed.2d 726, 740 (1963); *Gambino v. United States*, 275 U.S. 310, 48 S.Ct. 137, 72 L.Ed. 293 (1927).

The reasoning of Judge Learned Hand in *Marsh v. United States, supra,* which has been followed by numerous other courts, is fully applicable in Maryland. As Judge Hand pointed out, in light of the Supremacy Clause,[9] an Act of Congress "is as valid a command within the borders of [a state] as one of its own statutes." 29 F.2d at 174. *See, e.g., Mondou v. New York, N.H. & H.R. Co.*, 223 U.S. 1, 57, 32 S.Ct. 169, 178, 56 L.Ed. 327, 349 (1912) ("When Congress . . . adopted [an] act, it spoke for all the people and all the states, and thereby established a policy for all. That policy is as much the policy of [the state] as if the act had emanated from its own legislature, and should be respected accordingly. . . ."); *Md.–Nat'l Cap. P. & P. Comm'n v. Crawford*, 307 Md. 1, 13–14, 511 A.2d 1079 (1986); *County Exec., Prince Geo's Co. v. Doe*, 300 Md. 445, 454, 479 A.2d 352, 357 (1984). This principle is underscored in Maryland by Article 2 of the Maryland Decla-

---

9. Article VI, cl. 2, of the Constitution of the United States.

ration of Rights, which mandates that federal law "shall be the Supreme Law of the State." [10]

Consequently, we agree with the above-cited cases that state and local law enforcement officials may appropriately enforce federal law.

■ Most of the cases holding that state and local officials may enforce federal law arise in the context of an arrest by a police officer for a violation of federal law, and the issue concerns the legality of the arrest. A few cases arise in other contexts. *See, e.g., People v. Lafaro, supra,* 250 N.Y. 336, 165 N.E. 518 (holding that a state official's enforcement of federal law is sufficiently part of his official duties so that one who attempted to bribe the official was guilty of the crime of bribery). No case involving circumstances like those in the case at bar has been called to our attention. Nevertheless, the principle set forth in the above-cited cases is fully applicable here. If a state police official is authorized to arrest someone for a violation of federal criminal law, the official is certainly authorized to withhold approval of an application to receive a handgun when receipt of the handgun would be a violation of federal criminal law. It would defy common sense to hold that the State Police were required to approve Randolph Berg's application to purchase a handgun and that, when Berg received the handgun pursuant to such approval, the State Police should then arrest him for violating federal law.

We hold, therefore, that in applying the provisions of Maryland Code (1957, 1992 Repl.Vol., 1995 Cum.Supp.), Art. 27, §§ 441–448, the State Police may properly consider federal law.

---

10. Article 2 of the Declaration of Rights provides as follows:

"The Constitution of the United States, and the Laws made, or which shall be made, in pursuance thereof, and all Treaties made, or which shall be made, under the authority of the United States, are, and shall be the Supreme Law of the State; and the Judges of this State, and all the People of this State, are, and shall be bound thereby; anything in the Constitution or Law of this State to the contrary notwithstanding."

### III.

■ Although it was appropriate for the State Police to enforce the prohibition set forth in the federal statute, the circuit court erred in directing the State Police to determine whether Berg should be granted relief from the federal prohibition.

Section 925(c) of 18 U.S.C. authorizes an "application to the Secretary [of the Treasury or the Secretary's designee] for relief from the disabilities imposed by Federal laws with respect to the acquisition, receipt, . . . or possession of firearms, and the Secretary may grant such relief if" certain criteria are "established to his satisfaction. . . ." Congress vested the authority to grant relief under § 925(c) solely in the Secretary of the Treasury or his designee, and the Secretary's only designee is the Director of the Bureau of Alcohol, Tobacco and Firearms. Congress did not grant the authority to any other agencies, federal or state. Furthermore, the criteria for relief must be established to the satisfaction of the Secretary or his designee; whether some other administrative official or agency may be satisfied that the criteria are established is immaterial.

The criteria for relief set forth in 18 U.S.C. § 925(c) do not constitute a statutory exception to the federal firearms prohibition, to be applied by any officials or entities involved in the enforcement of the prohibition. Instead, § 925(c) creates a specific administrative remedy in the United States Treasury Department, under which an applicant may be able to obtain relief from the federal prohibition. Treasury Department regulations prescribe a detailed administrative procedure, delineating the form and content of the application for relief, the type of documentary evidence to be submitted with the application, etc. See 27 C.F.R. 178.144 (1995). It is only after someone applies for and obtains a grant of relief from the Bureau of Alcohol, Tobacco and Firearms that he or she falls within the exception to the prohibition set forth in § 925(c).

When Congress intended that remedial action by agencies or officials outside of the Treasury Department would have an

effect upon the federal prohibition, Congress expressly so stated. For example, 18 U.S.C. § 921(a)(20) provides in pertinent part as follows:

> "Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms."

The grant of relief in § 925(c), however, must be done by the Secretary of the Treasury or his designee, who is the Director of the Bureau of Alcohol, Tobacco and Firearms. Thus, the State Police hearing officer correctly held that Berg would have to obtain any grant of relief under 18 U.S.C. § 925(c) from the Bureau of Alcohol, Tobacco and Firearms.

## IV.

■ Finally, we reject Berg's argument that the federal statute cannot be applied to him because the transaction in this case was wholly intrastate.

The federal statute's prohibitions upon commerce in firearms, set forth in 18 U.S.C. § 922, have consistently been interpreted as reaching any transaction whereby the firearms at some time had "a past connection to interstate commerce." *United States v. Fitzhugh,* 984 F.2d 143, 146 (5th Cir.1993).

In *Scarborough v. United States,* 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977), the Supreme Court concluded that 18 U.S.C. § 1202(a), the statutory forerunner to 18 U.S.C. § 922(g)(1), required only "the minimal nexus that the firearm have been, at some time, in interstate commerce." 431 U.S. at 575, 97 S.Ct. at 1969, 52 L.Ed.2d at 591. Similarly, in *Barrett v. United States,* 423 U.S. 212, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976), the Supreme Court, in applying 18 U.S.C. § 922(h), which ultimately was incorporated in the current § 18 U.S.C. § 922(g), held the statute to be constitutional in reaching intrastate transactions between the convicted persons and gun dealers so long as the firearms had been transported at some

time in interstate or foreign commerce.[11]  *See also United States v. Hanna,* 55 F.3d 1456, 1462 (9th Cir.1995); *United States v. Presley,* 52 F.3d 64, 67 (4th Cir.1995); *United States v. Carter,* 981 F.2d 645, 647 (2d Cir.1992), *cert. denied,* 507 U.S. 1023, 113 S.Ct. 1827, 123 L.Ed.2d 456 (1993); *United States v. Poole,* 929 F.2d 1476, 1479 (10th Cir.1991); *United States v. Fish,* 928 F.2d 185, 186 (6th Cir.), *cert. denied,* 502 U.S. 834, 112 S.Ct. 115, 116 L.Ed.2d 84 (1991); *United States v. Rodriguez,* 915 F.2d 397, 399 (8th Cir.1990); *United States v. Buggs,* 904 F.2d 1070, 1076 (7th Cir.1990); *United States v. Wallace,* 889 F.2d 580, 583 (5th Cir.1989), *cert. denied,* 497 U.S. 1006, 110 S.Ct. 3243, 111 L.Ed.2d 753 (1990); *United States v. Conner,* 886 F.2d 984, 985 (8th Cir.1989), *cert. denied,* 493 U.S. 1089, 110 S.Ct. 1156, 107 L.Ed.2d 1060 (1990).

The administrative record in this case discloses that the particular handgun which Berg applied to purchase was manufactured outside of Maryland.  Thus, it had been shipped in interstate commerce to a Maryland gun dealer.  Therefore, under the cases cited above, the transaction was clearly encompassed by the federal statute and by the constitutional authority of Congress to regulate interstate commerce.

---

**11.** In 1986, Congress amended the Gun Control Act of 1968 and condensed 18 U.S.C. §§ 922(h) and 1202(a) and added them to the current version of § 922(g).  In *United States v. Sherbondy,* 865 F.2d 996, 999–1001 (9th Cir.1988), the United States Court of Appeals for the Ninth Circuit, examining the history of § 922(g), explained:

"[S]ection 922(g) dealt with the shipping of guns, section 922(h) dealt with the receipt of guns, and section 1202(a) dealt with the shipping, receipt, and possession of guns.  All the provisions required some connection with interstate or foreign commerce.  [Congress] consolidated the three statutes at section 922(g), using language from each."

\*　　\*　　\*　　\*　　\*

"In amalgamating sections 922(g), 922(h) and 1202(a), Congress gave no indication that it meant to narrow the statutory reach with respect to possession.  Accordingly, we hold that the *Scarborough* [431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977)] minimal nexus standard applies to § 922(g) and that a past connection with commerce is enough. . . ."

*See also United States v. Batchelder,* 442 U.S. 114, 118, 99 S.Ct. 2198, 2201, 60 L.Ed.2d 755, 761 (1979) ("not[ing] the partial redundancy of §§ 922(h) and 1202(a), both as to the conduct they proscribe and the individuals they reach").

*JUDGMENT OF THE CIRCUIT COURT FOR CARROLL COUNTY REVERSED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE DECISION OF THE STATE POLICE. RESPONDENT TO PAY COSTS.*